# Hayes's Appeal.

*Principal and agent—Mortgage—Certificate of no defense.*

Where a party executes a bond and mortgage and gives therewith a certificate of no defense, and places these instruments in the hands of an agent for the purpose of raising money, he cannot defend against a purchaser of the mortgage for value without notice, on the ground that the agent misappropriated the money.

If an agent who has raised a loan for his principal by means of a mortgage and certificate of no set-off, is called upon to pay the loan, and with the knowledge of his principal uses the mortgage and certificate to secure the money from another party, the principal cannot subsequently object to the payment of the mortgage, on the ground that the agent had acted without authority, or had misappropriated the fund.

Argued Jan. 29, 1900. Appeal, No. 189, Jan. T., 1899, by Mary Hayes, from order of C. P. Montgomery Co., March T., 1897, No. 17, sustaining exceptions to auditor's report. Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ. Affirmed.

Exceptions to report of William F. Solly, auditor.

From the record it appeared that on January 18, 1897, Mary Hayes filed a petition in which she averred that she was the owner of a tract of land situated in Gwynedd township, and that a mortgage for $3,000 had been created thereon by Henry G. Williams to William T. Smith, which mortgage had been assigned to Edward A. Armstrong. She prayed that she might be permitted to pay into court the amount due on the mortgage. A rule was granted to bring in all parties in interest, personal service to be made upon Edward A. Armstrong, the State Mutual Building & Loan Association of New Jersey and J. Henry Hayes. Subsequently the prayer of the petition was granted and $3,000 was paid into court. On May 18, 1897, J. Henry Hayes and Mary Hayes petitioned the court to appoint an auditor to make distribution of the fund.

From the evidence taken before the auditor it appeared that J. Henry Hayes, father of Mary Hayes, originally owned the land. He conveyed the land to Henry C. Williams, who was a straw man, who in turn executed the mortgage in contro-

versy to William T. Smith, who was also a straw man. Smith assigned the mortgage to Judge Armstrong, counsel for the New Jersey Trust Company, from whom Hayes desired to secure a loan. Williams executed a certificate of no set-off which he delivered to Smith, who in turn delivered it to Armstrong. After these transactions Williams conveyed the property to Mary Hayes, subject to the payment of the mortgage. As Hayes was not a depositor of the New Jersey Trust Company, it was arranged that the loan should be made to D. Leonard Moore, who deposited as part security therefor the $3,000 mortgage covering the Gwynedd property. Subsequently upon the New Jersey Trust Company requiring the loan to be paid, Moore arranged to secure the money from the State Mutual Building & Loan Association, and as security for the loan the mortgage was delivered to the association. Moore subsequently absconded. The evidence relating to the rehypothecation of the mortgage is stated at length in the opinion of the Supreme Court.

The auditor awarded the fund to Mary Hayes. Exceptions to the auditor's report were sustained by the court.

*Errors assigned* were in sustaining exceptions to auditor's report.

*F. G. Hobson* and *George Emlen*, for appellant.—The finding of an auditor upon the facts should not be disturbed unless for clear error: Gilbert's App., 78 Pa. 266; Schepper's App., 125 Pa. 598.

A mortgage is at all times subject to all equities between the parties: Eldred v. Hazlett, 33 Pa. 307; Earnest v. Hoskins, 100 Pa. 551; Michener v. Cavender, 38 Pa. 334; Theyken v. Howe Machine Co., 109 Pa. 95; Mott v. Clark, 9 Pa. 399; Twitchell v. McMurtrie, 77 Pa. 383; Geiger v Peterson, 164 Pa. 352; Myerstown Bank v. Roessler, 186 Pa. 431.

*N. H. Larzelere*, with him *Henry Freedley*, for appellee.— When Hayes put these securities into the hands of Moore for the purpose of enabling Moore to borrow money on his own obligations for Hayes and holding him out to the world not only as the owner, but as the debtor as well, he placed them

entirely beyond his own control and could not recover any part of them except by paying or tendering the entire debt; and this extended beyond Moore to all of the parties from whom he borrowed even if the specific securities were not pledged for the debt: Kramer's App., 37 Pa. 71; Rice's App., 79 Pa. 201; Warner's App., 43 Leg. Int. 204.

Recovery by the creditor against Moore must be accompanied by the production or accounting for the collateral: Stuart v. Bigler's Assn., 98 Pa. 80; Spalding v. Bank of Susquehanna County, 9 Pa. 28; Bank of the United States v. Peabody, 20 Pa. 454; Ocean Nat. Bank v. Fant, 50 N. Y. 474.

While it is true that the obligor holds a right of defalcation against an assignee, this right is personal to the obligor and does not extend to the vendee or terre-tenant of the premises, especially when, as here, the deed is expressly upon condition of payment: Jeffers v. Gill, 91 Pa. 290; Sellers v. Benner, 94 Pa. 207.

OPINION BY MR. JUSTICE MESTREZAT, March 19, 1900:

We agree with the disposition of this case made by the learned court below. The facts found by the court are clearly deducible from the evidence produced before the auditor.

It is conceded that the mortgage to Williams was created for the purpose of obtaining a loan for Hayes. In September, 1892, D. Leonard Moore secured a loan of $5,000 from the New Jersey Trust Company, for which he gave as collateral security the mortgage in question accompanied by a certificate of no defense thereto, and two other mortgages on Camden real estate, owned by Hayes. In October, 1892, Moore obtained another loan of $10,000 from the same company for which other collateral security of Hayes was given. Hayes received the proceeds of both loans. Moore was the intimate and trusted friend of Hayes and the securities were placed in his hands with which to negotiate the loans. On the 11th day of August, 1893, these loans were paid to the trust company by Moore, and the collaterals were redelivered to him on that day.

It is claimed by Hayes that he furnished the money to Moore to pay the first loan to the trust company and that that entitled him to have the mortgage returned to him. He further asserts that he never authorized Moore to rehypothecate the mortgage

for any other loan, and if Moore did pledge it to the State Mutual Building & Loan Association of New Jersey, it was to secure funds for himself and not for Hayes, and was without the latter's authority.

The learned court below has clearly demonstrated that this position is not sustained by the testimony. On the contrary, the evidence shows that Hayes did not furnish the money to pay either of the two loans and that Moore was compelled, on request of the trust company, to raise the money and to pay both loans. While there is an attempt to discredit Judge Armstrong in regard to the transaction, we think his testimony is clear and is corroborated by the testimony of Hayes. Armstrong acted as counsel for all the parties concerned and was familiar with the whole transaction. He testified that in 1893, Moore was called upon by the New Jersey Trust Company to pay the loan he had secured for Hayes and, for that purpose, Moore obtained a loan of $6,000 from the State Mutual Building & Loan Association; that the securities held as collateral by the trust company were delivered to the association for the same purpose, and that no part of the $6,000 loan has been paid.

It thus appears that Moore, being required to pay the loan of the New Jersey Trust Company, borrowed the money for that purpose from the loan association, and pledged to it the collateral security held by the trust company, which included the $3,000 mortgage. The loan was obtained from the association on August 11, 1893, and on the same date Moore paid the trust company his indebtedness to it.

Mr. Hayes testifies that he never authorized this mortgage to be pledged for any other than the loans from the New Jersey Trust Company, and that when they were paid, the mortgage was to be returned to him. But in reply to the question, "Did you authorize Mr. Moore or any one else for you, to borrow any money from anywhere else, to repay that loan or to pledge any of your collateral in order to raise money to pay that loan he said: "Well, while I did not authorize him, he was notified to take up these loans in the New Jersey trust. Mr. Moore was required by the officers of the New Jersey Trust Company to pay off these loans. Of course it was necessary to borrow money somewhere to pay them off, but at the time Mr. Moore told me he was called upon to pay off these loans, I asked the

liberty of doing it myself, instead of Mr. Moore. Mr. Moore said that it was not necessary; that I had enough trouble just then, that he would take care of it; that he would see that the loans were taken care of, were paid to the New Jersey Trust Company through some one else."

Thus we have a distinct admission by Hayes that Moore was compelled to pay the trust company loan and that in order to do so, it was necessary for him to borrow the money. He notified Hayes that "he would see that the loans were taken care of, were paid from somewhere else." Hayes did not object to the proposition to secure another loan. But with what security was Moore to obtain the loan? He certainly did not expect Moore to use his own collateral, and if he did not, he evidently intended him to use the collateral which Hayes had placed in his hands to secure the original loan. This is too apparent to be overthrown by the mere declaration of Hayes that he did not authorize a repledging of the $3,000 mortgage.

Hayes says he furnished the money or the collateral to Moore to pay the $5,000 loan to the trust company, and that the mortgage was to be returned to him for cancellation. But this statement is not borne out by the facts of the case or by his own testimony. Moore declined his offer to permit him to pay the loan, as appears from the testimony of Hayes above quoted, and notified him that he would secure another loan, to which Hayes did not object. Hayes admits he did not know where Moore obtained the money to pay the trust company. He also says he furnished Moore with collateral to pay the loan in February, 1893, yet, subsequent to that date, and prior to its payment in August, 1893, the loan was renewed at least once with the trust company, and Hayes admits that he paid the interest on the entire loan up to December, 1893. He testifies: "Q. Now this $15,000 loan to the New Jersey Trust Company you say, I understand, was paid off? A. Yes, sir. Q. Where was that money obtained, so far as you know? A. Well Mr. Moore obtained that money and that is all I know about it. Q. Where did he get it from? A. I do not know. . . . Q. Well how much money did D. Leonard Moore raise for you? A. How much? $15,000 for me. Q. That was all? A. Yes, sir. Q. Who paid the accumulating interest? A. I paid it up to December, 1893. Q. To whom did you pay it? A. To Moore."

That Hayes furnished Moore the collateral to take up the trust company loan cannot be seriously contended as we have shown. But if he did, it cannot be successfully maintained, under the evidence in the case, that it was applied to that purpose. The allegation of Hayes that it was so applied is not supported by his own testimony ; on the contrary, he admits he does not know. He testified : " Q. Were you present (when Moore got the money to take up the $5,000 loan) ? A. I furnished him collateral to raise the money to take up that loan. Q. But you do not know that he did it with that money? A. I cannot tell."

It is apparent that Mr. Hayes and his daughter had not conceived the idea of their ownership of this fund when these proceedings were instituted. And in this connection it should be remarked that if Hayes had any claim on the fund secured by the mortgage, as he alleges, his right thereto had accrued more than three years and a half prior to the time when Mary Hayes asked that the funds be paid into court. Nor after this lapse of time, did he or his daughter claim title to the mortgage. On the contrary, in her petition to have the money paid into court, filed January 18, 1897, Miss Hayes asserts under oath, that the property was conveyed to her subject to the payment of the mortgage debt, and that " the holder of such mortgage resides without the jurisdiction of this commonwealth and that she does not know the name or whereabouts of the true owner of the mortgage." It may be fairly inferred that this proceeding to have the land relieved of the lien of the mortgage was commenced with the knowledge and advice of Mr. Hayes. The allegation, therefore, in the petition, may be considered the solemn declaration of the father and daughter that neither of them was at that time, the owner of the mortgage or the money secured thereby. The assertion to the contrary, four months thereafter, in their petition for the appointment of an auditor, is not sufficient to convince us that their former declaration was false and that their claim to this fund is meritorious. So far as disclosed by the testimony, no facts relative to this matter were known to them in May, 1897, when they claimed the fund, that were unknown to them in January of that year, when Mary Hayes swore she was not the legal holder of the mortgage. Neither party attempts any explanation of the

inconsistent or antagonistic claims set forth in the two petitions, and we must assume that it was for the all-sufficient reason that none could be given. Both parties are, therefore, discredited and the testimony of Mr. Hayes can have little or no weight in determining the ownership of the fund for distribution.

From all the testimony in the case we think it clear that Moore paid the loan to the trust company with the money he obtained from the loan association and that he had the authority of Hayes to transfer to the association the mortgage in question to secure the loan. This being true, Miss Hayes can have no claim on the fund for distribution. Her rights are only those of her father's. The loan of the State Mutual Building & Loan Association is still unpaid and until Hayes satisfies that indebtedness, for which the association holds this mortgage as security, he and his daughter cannot be awarded the fund in court.

But if Hayes were ignorant of the repledging of the mortgage to the loan association, or if done without his authority, as he asserts, it would not defeat the right of the association to the proceeds of the mortgage. When he delivered to Moore the mortgage and the certificate of no defense thereto for the purpose of raising the loan, Hayes authorized him to negotiate the security for that purpose, and the association, being a holder for value without notice, cannot be affected by any equities of the mortgagor, or by a misappropriation by Moore of the money raised by him. The association was not required in order to protect itself against such equities, to make inquiry of Hayes prior to making the loan to Moore. The certificate of no defense to the mortgage relieved it of any duty of that character.

This case is clearly within the rule laid down in Robertson v. Hay, 91 Pa. 242. There it is held that where a party executes a bond and mortgage and gives therewith a certificate of no defense, and places these instruments in the hands of an agent for the purpose of raising money, he cannot defend against a purchaser of the mortgage for value without notice, on the ground that the agent misappropriated the money. And this rule is held in Ashton's Appeal, 73 Pa. 153, to extend to any subsequent assignee of the mortgage. In Robertson v. Hay, supra, Mr. Justice MERCUR says: "It matters not that Gill (the agent) may have sold the mortgage and caused it to be

transferred before he was authorized so to do, under the private instructions given him by the mortgagor; nor that he failed to account to the latter for the money received therefor. These facts are insufficient to defeat a recovery by the assignee. The papers which the mortgagor executed and placed in the hands of Gill, not only impliedly authorized a sale of the bond and mortgage, but invited purchasers by expressly declaring that he had 'no defense of any kind whatever.'"

It is conceded that Hayes placed the mortgage and certificate of no defense in Moore's possession for the purpose of obtaining a loan. He, therefore, cannot deny Moore's authority to re-pledge the securities for the loan obtained from the association.

The assignments of error are overruled, and the decree of the court below is affirmed.