# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Murphy v. Green, Appellant.

*Ground rents—Nonpayment for fifty years—Payments and promises to pay—Redeemable and irredeemable ground rents—Acts of April 27, 1855, P. L. 368, and June 24, 1885, P. L. 161.*

1. Where no payments were made of a ground rent from the time of its creation in 1849, until 1900, and then the owners of the ground paid the rent from 1900 to 1906, and the ground landlord received the same, and the owners represented that the ground rent was valid and subsisting and that they would thereafter pay the same, and it was purchased by the plaintiff as such, the fact that no payment was made from 1849 to 1900 does not extinguish the original ground rent, and the ground owners who agreed to pay and did pay the rent from 1900 to 1906 and their successors in title cannot enforce a claim to redeem the rent as a redeemable ground rent under the Act of June 24, 1885, P. L. 161. Nor can they be heard to say that the ground rent has become extinguished and irrecoverable.

2. In such a case even if the irredeemable ground rent had been extinguished by the nonpayment of it for fifty years still the ground owners who made the promises to pay and made the payments and their successors in title are estopped from denying that the ground rent which had been purchased on the strength of the recorded deed creating it and the promises to pay and the payments from 1900 to 1906, was a valid and subsisting irredeemable ground rent.

3. Where suit is brought in such a case to enforce the payment of ground rent accruing after such payments made the twenty-one years

referred to in the Act of April 27, 1855, P. L. 368, are the twenty-one years next preceding the bringing of the suit.

Argued Oct. 21, 1910.    Appeal, No. 172, Oct. T., 1910, by defendants, from judgment of C. P. No. 4, Phila. Co., March T., 1909, No. 2,268, on verdict for plaintiff in case of Margaret Murphy, Assignee of Francis H. Thole, Trustee for John Roberts et al., Devisees of Eliza Roberts, deceased, Original Covenantee, v. John Roberts, Original Covenantor, and Freda B. Green, Real Owner.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.    Affirmed.

Assumpsit to recover a ground rent.    Before AUDEN-RIED, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in refusing to enter judgment for defendant non obstante veredicto.

*Stanley Folz*, with him *Leon H. Folz*, for appellant.— At the time the ground rent deed was recorded in 1900 the ground rent had been extinguished and terminated by reason of its nonpayment for fifty years prior to that time: Korn v. Browne, 64 Pa. 55; Biddle v. Hooven, 120 Pa. 221; Wingett's App., 122 Pa. 486; Wallace v. United Presbyterian Church, 152 Pa. 258; Meek's Est., 161 Pa. 360; Clay v. Iseminger, 187 Pa. 108; Clay v. McCreanor, 9 Pa. Superior Ct. 433; Cadwalader v. Springsteen, 36 Pa. Superior Ct. 134; Safe Deposit & Trust Co. v. Marburg, 110 Md. 410 (72 Atl. Repr. 839).

With respect to the fact that the plaintiff was a purchaser for value when she took the conveyance from Thole, which purported to convey to her a ground rent, it might be sufficient to say that as the ground rent had ceased to exist, there was nothing for Thole to convey and the plaintiff took nothing by her deed: Moore v. Luce, 29 Pa. 260; Schall v. R. R. Co., 35 Pa. 191.

A title which has ripened by adverse possession, can-

not be conveyed by a parol abandonment or relinquishment, but must be transferred by deed: Parham v. Dedman, 66 Ark. 26 (48 S. W. Repr. 673); School District No. Four v. Benson, 31 Maine, 381; Austin v. Bailey, 37 Vt. 219; Byers v. Sheplar, 7 Atl. Repr. 182; Ill. Cent. R. R. Co. v. Wakefield, 173 Ill. 564 (50 N. E. Repr. 1002).

There is nothing in plaintiff's contention that the period of the statute is to be counted backward from the time of the institution of the suit, and that the twenty-one years of the statute means the twenty-one years next preceding the institution of suit: Cannon v. Stockmon, 36 Cal. 535; Dean v. Goddard, 55 Minn. 290 (56 N. W. Repr. 1060); Geohegan v. Marshall, 66 Miss. 676 (6 So. Repr. 502); Allen v. Mansfield, 82 Mo. 688.

*D. J. Dolan* and *John G. Johnson*, for appellee.—The construction for which appellee contends seems to have been that uniformly put by the legal profession upon the act of 1855.   In every reported case which we have found, the period of twenty-one years was counted back from the date when the action was brought: Hiester v. Shaeffer, 45 Pa. 537; Korn v. Browne, 64 Pa. 55; Biddle v. Hooven, 120 Pa. 221; Wingett's App., 122 Pa. 486; Wallace v. Fourth United Presbyterian Church, 111 Pa. 164; Meek's Est., 161 Pa. 360; Fessenden's Est., 170 Pa. 631; Gassman's Est., 3 Walker (Pa.), 126; Barber v. Mullen, 176 Pa. 331; Heiss v. Banister, 176 Pa. 337; Clay v. McCreanor, 9 Pa. Superior Ct. 433; Cadwalader v. Springsteen, 36 Pa. Superior Ct. 134.

Even if, however, we are mistaken in our construction of the statute of 1855, in the present case the appellant is, we maintain, estopped from asserting that the ground rent in question is either released or extinguished or irrecoverable: Woodward v. Tudor, 81* Pa. 382; Putnam v. Tyler, 117 Pa. 570; Maple v. Kussart, 53 Pa. 348; Miller's App., 84 Pa. 391; Marshal v. Foltz, 221 Pa. 570.

*Stanley Folz*, with him *Leon H. Folz*, for appellants, in reply.—The argument based upon the doctrine of estoppel

is now made for the first time in this case. With respect to this argument the appellant submits that, even if there was an estoppel, it could not fasten an irredeemable ground rent upon her property. At the most it could create only a redeemable ground rent. Furthermore, the appellant submits, she is not estopped from denying the existence of a ground rent: New York & New Haven R. R. Co. v. Schuyler, 38 Barb. 534; In re Stapleford Colliery Co., L. R. 14 Ch. Div. 432; Miranville v. Silverthorn, 48 Pa. 147; Calder v. Chapman, 52 Pa. 359.

OPINION BY MORRISON, J., October 9, 1911:

In this action of assumpsit sur ground rent deed issue was joined and the case was tried before the court and a jury. At the trial the learned counsel for the respective parties agreed upon the facts and the court below held as a matter of law that the plaintiff was entitled to recover and directed the jury to find a verdict in favor of the plaintiff for the full amount of her claim. No question is raised as to the amount of the verdict, if the plaintiff is entitled to recover at all.

The defendant's counsel asked the court for a binding instruction in favor of the defendant and this being refused, counsel for defendant excepted and moved the court for judgment non obstante veredicto under the Act of Assembly of April 22, 1905, P. L. 286. The court having refused this motion and directed judgment on the verdict, the defendant's counsel excepted, and the court granted the exception and sealed a bill for the defendant.

Inasmuch as the counsel do not dispute as to the facts, we have adopted the defendant's counsel's statement of them, as given in their history of the case, and we have compared their statement with that of the plaintiff's learned counsel and we discover no material difference in the two statements. Our reason for adopting defendant's counsel's statement of facts is that we do not agree with their conclusions of law and therefore desire to

fully state their position in this opinion. The said statement of facts is as follows:

"On June 16, 1849, Eliza Roberts and John Roberts, brother and sister, joined in the execution of a deed whereby Eliza conveyed to John the premises 314 N. 15th street, reserving a ground rent of $45 per annum. Eliza died May 15, 1893. John died December 10, 1899. The deed of June 16, 1849, was not recorded by either John or Eliza, but after John's death it was recorded by his administrator on January 18, 1900. From the time of the creation of the ground rent until it was recorded in 1900, after the death of both parties to it, the ground rent was never paid. During those fifty years no payment, claim or demand for the ground rent was made nor was there any declaration or acknowledgment of its existence. By her will, dated November 20, 1848, Eliza devised her real estate to her brother John for life, and the remainder to the children of John and of another brother Henry. John died intestate, leaving to survive him a son, John Roberts, Jr., and Stella, the daughter of a deceased son, George W. Roberts. In 1900 the remainder-men under the will of Eliza Roberts instituted proceedings in the Orphans' Court in partition to dispose of the ground rents devised to them by Eliza, and included among these ground rents the one reserved out of 314 N. 15th street, by the deed of June 16, 1849. These ground rents were all purchased by Margaret Murphy, the present plaintiff, who took title by deed dated August 3, 1900. Title to the ground rents was insured by the Land Title & Trust Company, which in March, 1900, obtained from John Roberts, Jr., an affidavit wherein he swore that his father had died seized of 314 N. 15th street subject to the payment of an annual ground rent of $45, and that that property had descended under the intestate laws to him and his niece Stella, 'Who will pay said ground rent regularly so long as they own said real estate.'

"John Roberts, Jr., and Stella Roberts paid the ground

rent to plaintiff as long as they owned the property. On February 19, 1906, they conveyed it to William L. Gelston by deed reciting that the property was under and subject 'to the payment of a certain yearly ground rent or sum of $45 . . . . as the same shall hereafter accrue and become payable half yearly.'

"Gelston believing that the plaintiff held a redeemable ground rent upon the property on January 24, 1907, tendered to the plaintiff $795.68, in payment of the principal and arrearages of the ground rent the plaintiff claimed to hold and requested that the plaintiff accept the tender and extinguish the ground rent. This tender was refused.

"On August 28, 1908, Gelston conveyed the property to Freda B. Green, the present owner and defendant, but the deed contained no recital or reference to the ground rent in any shape or form.

"Freda B. Green maintained the tender made by Gelston and subsequently to the institution of this suit paid to the plaintiff the arrearages of the ground rent that accrued prior to the date of the tender made by Gelston. At the trial of the case she brought into court the capital of the ground rent of $750.

"At the trial in the lower court the above facts were all admitted. The appellant then contended that she was entitled to binding instructions in her favor for the following reason:

" '1. By reason of nonpayment of the ground rent from the time of its creation in 1849 until 1900, the ground rent was extinguished under the Act of April 27, 1855, P. L. 368, section 7.

" '2. No right to collect ground rent arose by reason of its payment for five years, from 1900 to 1905.

" '3. Any right the plaintiff might have to recover ground rent arose and was created no earlier than 1900, and hence would be subject to the Act of June 24, 1885, P. L. 161, sec. 1, prohibiting the creation or reservation of irredeemable ground rents; and inasmuch as in Janu-

ary, 1907, a sufficient tender was made of the principal and arrearages of the rent to that date which arrearages were paid since the institution of the suit, and the principal being brought into court, the plaintiff was not entitled to recover semi-annual payments of the ground rent accruing after the date of the tender.' "

To the positions above taken by the learned counsel for the appellant counsel for appellee summarize their reply as follows:

"1. That the statute of 1855, as interpreted by the subsequent Acts of the Legislature, requires that, to prevent a recovery on a ground rent, nonpayment for a period of twenty-one years next preceding the action must be shown.

"2. That this construction of the Act has been uniformly adopted by counsel in all reported cases involving the construction of the Act, and forms the basis of all decisions of the Courts of Appeal of this Commonwealth, in such cases.

"3. That there is no such analogy between the statute of limitations relative to estates in land entitling the owner to possession and the statutes of limitations affecting ground rents which would make the decisions of the courts of this Commonwealth relative to the former in any way applicable to the latter; and

"4. That the appellant being in privity with those for whose benefit the ground rent was sold, and who procured its sale upon the representation that it was a valid and subsisting rent, should not now, in equity and good conscience, be permitted to repudiate its validity."

The land in question was conveyed to William Gelston about six years after the recording of the ground rent deed and the present appellant did not acquire her title from Gelston for eight years after the said ground rent deed was recorded. The deed to Gelston was made subject to the payment of the ground rent created by the deed of June 16, 1849. Now, Gelston being the immediate grantor of appellant, it is difficult to see why she does not

stand in his shoes and in precisely the same position she would have occupied had her deed been made subject to the payment of said ground rent. She sets up no other title, except that coming to her from Gelston, and surely she is bound to look at the title deed of her grantor and that deed would have informed her that it was made subject to the payment by Gelston of said ground rent. It is true that in Clay v. McCreanor, 9 Pa. Superior Ct. 433, we held "the presumption of release or extinguishment of a ground rent, under the Act of April 27, 1855, P. L. 368, is not removed nor the bar of the statute tolled by the fact of a conveyance of the property reciting that the sale was made under and subject to the ground rent in question." But we do not refer to such provision in Gelston's deed as barring the statute of 1855, but as giving notice to the appellant that the land was subject to the payment of ground rent. We think, on the facts of this case, the appellant can make no defense that Gelston could not have made if he had retained the title to the property instead of conveying it to her.

Appellee avers, and it is admitted, that the ground rent was regularly received by her in semiannual payments from April 3, 1900, down to and including the year 1905. This suit was commenced March 29, 1909, for the recovery of payments of ground rent which became due, on the face of the deed on July 1, 1906, down to and including January 1, 1909, with interest on each of said installments from the date on which it became due. It thus appears that the appellee only claimed and recovered verdict and judgment for ground rent accruing subsequent to the payment of ground rent made from April 3, 1900, down to and including the year 1905.

Our question then is a narrow one,—Can the appellant avoid the liability of her property for the ground rent for which the court below granted judgment because a period of about fifty years elapsed from 1849, when the ground rent was created by deed, till 1900, when no ground rent was paid and no claim or demand was made on account

of the same, notwithstanding the fact that the ground rent deed was duly executed and delivered on June 16, 1849, and duly recorded on January 18, 1900, and the owners of the land out of which the ground rent issued regularly paid the same from April, 1900, down to and including the year 1905, and notwithstanding the fact that the appellee is in privity of title with the persons who so recognized their liability to pay and did pay said ground rent as above stated?

We here call attention to the fact that the ground rent in question was sold to the appellee on representation and affidavit made by John Roberts, the younger, that his father, John Roberts, died seized of the premises subject to the ground rent, that the same had descended to the deponent and his niece, Stella Roberts, 'who will pay said ground rent regularly so long as they own said real estate' and that the affidavit was made in order to procure insurance of the title to the ground rent. Thereafter the ground rent was paid by John Roberts, the younger, and his niece as above stated, for the years 1900 to 1905, inclusive, and by Gelston, who purchased the property from them, expressly subject to the ground rent, for the first six months of the year 1906.

The appellant relies on the Act of April 27, 1855, P. L. 368, to sustain her position that a release or extinguishment of the ground rent was to be presumed, and, therefore, the right of action was barred. The portion of sec. 7 of the act material here is as follows: "That in all cases where no payment, claim or demand shall have been made on account of, or for any ground rent, annuity or other charge upon real estate for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises, subject to such ground rent, annuity or charge, a release or extinguishment thereof shall be presumed, and such ground rent, annuity or charge shall thereafter be irrecoverable." We find that several supplementary acts affecting the same general subject-matter have since

been passed. The Act of June 12, 1878, P. L. 205, provided: "That the use of the words 'under and subject to the payment of such ground rent, mortgage or other incumbrance,' shall not alone be so construed as to make such grantee personally liable as aforesaid." The Act of June 14, 1897, P. L. 149, was passed to provide, as stated in the title, "a means where a ground rent has been extinguished by payment or presumption of law, for recording such extinguishment, and making the same binding and effectual." The last act upon the subject which we have found is that of April 27, 1909, P. L. 243, and it is a supplement to the act of 1897 to extend the provisions thereof to cases where no deed reserving said ground rent has been recorded. We do not see that these acts have any direct application to the present case. Here a deed reserving the ground rent exists and has been recorded, and counsel for appellee contend "that this is not the case covered by the act of 1909; and this deed has been recorded less than twenty-one years before the filing of any petition for extinguishment, which is the case covered by the second section of the act of 1897. Both of these acts, however, are interesting in that they are evidently drawn to supplement the pre-existing statutes regulating the extinguishment of ground rents, and should be assumed to indicate the legislative construction of the meaning of the phrases of the earlier act of 1855, when it provided for cases where no payments, etc., had been made for any ground rent for twenty-one years, or no declaration or acknowledgment of its existence had been made within that period.

"If there were any doubt as to the meaning of the original Act, the language of the supplementary Acts of 1897 and 1909, both of which, . . . . contemplate that the demand, payment or acknowledgment shall be made within twenty-one years preceding suit, makes it obvious that the legislative intent is that the twenty-one years shall be counted back from the date of the suit and not at random any time during the existence of the charge

"In this case there has been a period of twenty-one years since the creation of the rent during which no rent was paid; but subsequent to that period and within twenty-one years from the commencement of the present action there has been an express acknowledgment in writing by one of the owners of the land and an equally express acknowledgment by payment by both the owners of the land of all rents accruing during a period of six years, of its existence. If the twenty-one years are to be counted backward from the time when the action was brought, then clearly the appellee is entitled to recover upon proof of these facts. If, on the other hand, the appellant is entitled to select any period of twenty-one years since the creation of the ground rent and call upon the owner of the rent to prove a payment or acknowledgment during that specified period, then the appellee is not entitled to recover. We submit that the latter alternative cannot be supported either by reason or authority."

We have quoted quite liberally from the printed argument of counsel for appellee because the views therein expressed are in harmony with our opinion of the law as applicable to the situation of the appellant in this case. The learned counsel for appellant after taking the position that the ground rent was extinguished by reason of its nonpayment from 1849 to 1900, under the Act of April 27, 1855, P. L. 368, next takes the position that no right to collect ground rent arose by reason of its payment from 1900 to 1905, and their next position is that if any right to recover ground rent arose it was created no earlier than 1900, and hence would be subject to the Act of June 24, 1885, P. L. 161, prohibiting the creation or reservation of irredeemable ground rents. We do not agree with the counsel that the payment of the ground rent from 1900 to 1905, created a new and redeemable ground rent and, therefore, we do not feel called upon to discuss at length the act of 1885. We shall hereafter attempt to show that on the facts of this case the appellant is not in position to go back of twenty-one years from the institution of the

suit and defeat the plaintiff's right to recover because no ground rent was paid or demanded from 1849 to 1900. Many of the cases to which we shall now refer are cited by appellant's counsel, but we are not convinced that they sustain the doctrine that the ground rent which fell due on the deed of 1849, after 1905, was rendered irrecoverable because of no payment or demand for ground rent between 1849 and 1900.

In Hiester v. Shaeffer, 45 Pa. 537, it appears in the opinion by REED, J., that a claim or demand had been made and judgment had been obtained at a date within twenty-one years prior to the bringing of that suit against the defendant upon the ground rent, and it was held that this took the case out of the bar of the act of 1855; although, as appears from the report, that judgment was for thirty-five years arrears of ground rent and no other demand than by the suit in which the judgment had been obtained, had ever been made.

Korn v. Browne, 64 Pa. 55, was an action of covenant for ground rent by John C. Browne against John Collins, with notice to Henry Korn, terre-tenant. The writ was issued April 14, 1868, upon a ground rent reserved by a deed dated January 30, 1834. The defendant gave in evidence a notice to plaintiff that on the trial he would be called on to prove the payment by defendant, or anyone under him, of ground rent within twenty-one years preceding the suit. He also gave in evidence a deed of the ground rent to himself, dated February 26, 1840; also sale by the sheriff of a lot out of which the ground rent issued; the deed having been acknowledged May 14, 1859, and conveyance by the sheriff's vendee to him April 19, 1861. Upon the facts of that case the Supreme Court held that the court below erred in holding that the act of 1855 did not apply to this case and in the conclusion of the opinion we find this paragraph: "We think it did, and as the plaintiff did not prove any claim or demand or payment, or any declaration or acknowledgment of the existence of the ground rent within twenty-one years,

the statute presumption operated an extinguishment, and the ground rent became irrecoverable." Now, in view of the fact that the above case was tried on a notice to plaintiff to prove on the trial the payment by defendant, or anyone under him, of ground rent within twenty-one years preceding the suit, we regard the above-quoted paragraph as a plain indication by the Supreme Court that the statutory period should be counted back from the institution of the suit.

Biddle v. Hooven, 120 Pa. 221, was an action of covenant sur ground rent deed brought to December term, 1885, upon a ground rent reserved October 2, 1845. That case was an appeal to the Supreme Court from a judgment overruling a demurrer to a special plea and entering judgment for the defendant. The special plea was that "no payment, claim or demand has been made on account of or for the said yearly ground rent for twenty-one years prior to the commencement of said suit, and no declaration or acknowledgment of the existence thereof has been made within that period by the owner of the premises subject to said ground rent," etc. In the opinion of the Supreme Court, by Mr. Justice PAXSON, we find the following: "I shall not attempt to show that statutes of limitation, which affect the remedy merely, are constitutional. There are some few legal principles which may be regarded as settled, and this is one of them. If, therefore, the Act of 1855 merely operates to deprive the owner of a remedy for the collection of his ground rent after the expiration of twenty-one years from any suit, claim, or demand for the same, we cannot see any sufficient reason for holding that the Act is unconstitutional. . . . The most that can be made of this language is that it makes the ground rent irrecoverable after the statutory period. After the lapse of twenty years mortgages, bonds, judgments, arrears of ground rent, in fact all specialties, are presumed to be paid. But this is a presumption of fact liable to be rebutted; not a legal presumption, as was erroneously stated in Korn v. Browne, 46 Pa. 55. The

Act of 1855, in its application to ground rents, made this presumption a legal presumption after twenty-one years, which cannot be rebutted." When we consider the special plea in that case and the language in the opinion of the Supreme Court there does not seem to be much necessity for arguing that the twenty-one years mentioned in the act of 1855 is to be counted backward from the date of the commencement of the suit. If such is not the rule we hardly think the Supreme Court would have disposed of that case by the use of the language above quoted.

In Wingett's Appeal, 122 Pa. 486, Mr. Justice WILLIAMS, in delivering the opinion of the Supreme Court, used the following language: "What, then, was the effect of the Act of 1855 upon the legatees? Did it put the burden of showing the circumstances necessary to relieve against the bar of the Act upon them? This is answered by a glance at the Act itself. It provides that anyone claiming the payment of any ground rent, annuity, or other charge upon real estate, which has been due for twenty-one years, must show some 'payment, claim, or demand,' on account of the alleged lien, or some 'declaration or acknowledgment of the existence thereof,' made within the twenty-one years by the owner of the premises, subject to such charge." Made within twenty-one years of what date? Obviously the answer is, within twenty-one years of the bringing of the suit. Now in the present case the plaintiff was able to show payments of the ground rent annually for a period of six years well within the statutory period counting back from the date of the commencement of this action.

The case of Wallace et al. v. Fourth United Presbyterian Church of Pittsburg was twice before the Supreme Court and is reported in 111 Pa. 164 and 152 Pa. 258. The first appeal involved only a question as to the title to the ground rent. The second appeal was on an action of covenant brought to June term, 1885, upon a ground rent reserved prior to 1826. At that time a life estate in the rent became vested in Jane Wallace. The rent was

paid regularly to her until 1863, when she executed a deed purporting to convey a fee in the rent to one Hayes who recorded his deed within a few days after its date. He, in turn, in May, 1863, released the rent to the church. The plaintiff's title to the rent did not vest until the death of Jane Wallace in 1864. No recognition or payment by the church and no demand by the plaintiffs was made after May, 1863, until the bringing of the suit on April 1, 1885, more than twenty-one years after the release. Plaintiffs claimed that the statute only ran against them from the date when their title vested. The Supreme Court held that no exception was contained in the act of 1855 of persons under disability; that a demand made by the plaintiffs, but based upon what was found to be a nonexistent title, was not a demand which barred the running of the statute; and finally that (p. 264) "as no other claim is alleged to have been made within the period of twenty-one years before suit brought in this case, the statute must apply according to its terms."

In Meek's Est., 161 Pa. 360, there was a legacy charged upon land by will in favor of a widow in lieu of dower and she had been told in 1860, by the testator's devisees, that they would pay her nothing more unless compelled by law. She did nothing to enforce her claim for thirty-one years and the court below on an auditor's report held that her claim was barred by the act of 1855. It is manifest that the thirty-one years in this case was the period of time between the last payment to her and the presentation of her claim in 1891. The Supreme Court affirmed the decision of the lower court.

In Fessenden's Est., Tyler's App., 170 Pa. 631, it was held as stated in the syllabus: "Where land is devised subject to a charge created upon it by will, and the devisee subsequently sells the land, but continues to pay the charge in exoneration of his vendee, the limitation under the Acts of April 27, 1855, P. L. 368, and February 26, 1869, P. L. 3, providing that annuities and charges upon land shall be extinguished if no demand is made within

twenty-one years, will begin to run only from the time the devisee ceases to pay; and in such case the charge upon the land will not be extinguished under said Acts, although no demand shall have been made upon the grantee of the land within twenty-one years."

In Barber v. Mullen, 176 Pa. 331, an action of assumpsit was brought to June term, 1890, on a ground rent reserved in a deed dated March 1, 1855. In the opinion of the Supreme Court it is stated that: "There has been no payment of the ground rent, or on account of it, since its reservation in 1855. . . . After 1868, and before the commencement of this suit, no claim or demand was made upon Wood, Relay or Mullen for or on account of the ground rent, nor any declaration or acknowledgment made by either of them of the existence of it." The real point decided in this case was that a demand made upon the covenantor after he has parted with the title to the fee was not sufficient to prevent the running of the statute. The court below gave binding instructions for the defendant, and the Supreme Court affirmed the judgment.

Heiss v. Banister, Peters' App., 176 Pa. 337, was an action of assumpsit sur ground rent deed brought to March term, 1892, in which the terre-tenant (appellant) had not been joined as a party defendant. Her first knowledge of the proceeding was after judgment had been obtained and when the sheriff advertised the selling of her property. She immediately filed a petition to open the judgment, averring the foregoing facts, and also, first, that the plaintiff only owned one-half of the rent at most, but had taken judgment for the whole, and, second, that, as stated in the opinion of the Supreme Court "that for twenty-five years preceding the filing of the petition no payment, claim or demand had been made for any ground rent under the said deed, nor any declaration or acknowledgment of the existence thereof had been made during that period by any of the owners of the premises. The petition was sworn to and subscribed by the appellant and it contained an assertion of her ability to prove its

averments. No answer was filed to it nor evidence offered to controvert any of its allegations. In addition to the unanswered averments of the petition, testimony corroborative of them was submitted." The court below refused the prayer of the petition. The Supreme Court decided, "The order discharging the rule to open the judgment is reversed and the rule is reinstated and made absolute."

Clay v. Iseminger was twice before the Supreme Court and is reported in 187 Pa. 108 and 190 Pa. 580. It was also reported more fully, on appeal to the Supreme Court of the United States under the name of Wilson v. Iseminger, 185 U. S. 55. It first came up on a rule for judgment for want of a sufficient affidavit of defense. The rule had been discharged and this was affirmed in the Supreme Court in an opinion by Mr. Justice FELL in which he says: "In the affidavit of defense it was averred that no payment, claim or demand for the rent had been made by anyone for more than twenty-one years and that within that period of time no declaration or acknowledgment of the existence of the rent had been made by anyone owning the premises." Upon a subsequent trial, as appears from the report in 190 Pa. 580, there was no attempt to prove any acknowledgment or payment of the ground rent subsequent to 1859. The question argued and decided was the constitutionality of the act of 1855. In the report of the case in 185 U. S. 55, in an interesting opinion by Mr. Justice SHIRAS, it is said: "The theory of this remedial act is that upon which all statutes of limitation are based,—a presumption that, after a long lapse of time, without assertion, a claim, whether for money or for an interest in land, is presumed to have been paid or released. . . . Bonds, even when secured by mortgages upon land, mortgages themselves, merchant's accounts, legacies, judgments, promissory notes, and all evidences of debt, have universally been treated as lawfully within the reach of legislative power exercised by the passage of statutes of limitation. . . . We are un-

able to perceive any sound distinction between claims arising out of ground rent deeds and other kinds of debts and claims, which would exempt the former from the same legislative control that is conceded to lawfully extend to the latter."

Clay v. McCreanor, 9 Pa. Superior Ct. 433, was a case stated in an action of assumpsit sur ground rent deed, from which it appeared that, "no payment, claim or demand has been made on account of, or for, any ground rent for said premises for twenty-one years prior to the bringing of this suit." But that in a deed executed within that period, although subsequent to the Act of June 12, 1878, P. L. 205, the premises were conveyed under and subject to the payment of the rent. We held that such recital is not an acknowledgment made to the ground landlord, and works no estoppel against the vendee or his successor in title from pleading the statute in a suit brought years afterward.

Cadwalader v. Springsteen, 36 Pa. Superior Ct. 134, was a feigned issue under the Act of June 14, 1897, P. L. 149, brought to December term, 1904, to determine if a ground rent was extinguished by presumption of law. We held, in an opinion by our Brother HEAD, in substance, that the mere entry of the landlord upon unoccupied land for the purpose of making a demand within twenty-one years prior to the suit, where there was a record owner of the land, and no attempt to find or serve him was shown, plus a judgment upon the ground rent obtained more than twenty-one years before the suit was brought, was not sufficient to toll the statute of 1855. In the course of the opinion Judge HEAD said: "It would still not be the demand contemplated by the statute, viz.: one made within twenty-one years before the right was sought to be enforced." Here it clearly appears that this court then thought that the demand or payment must be made within twenty-one years of the commencement of the action.

The above review of the authorities leads us to the

conclusion that none of the reported cases support the appellant's contention that they can defeat the recovery in the present case by showing that no ground rent was paid or demanded from 1849 to 1900, in a case where regular payments of the ground rent were made for six years from 1900 to 1905, inclusive, and the suit was brought to March term, 1909. Many of the cases plainly indicate that the rule is to count back from the date when the suit is brought and if within twenty-one years from that date a lawful payment upon or demand for such ground rent has been made, then the act of 1855 is not a bar to the plaintiff's claim.

Appellant's counsel argue with much ability that a ground rent is real estate; and they would from this apparently reach the conclusion that the reasoning relative to statutes of limitation affecting real estate should be applied to the statutes of limitation affecting ground rents. Our reply to this contention is that, if a ground rent in real estate is real estate and indistinguishable from other estates in land governed by the statutes of limitation of March 26, 1785, 2 Sm. Laws 299 (2 Stewart's Purdon, 2268), there was no need of the subsequent statutes relative to ground rents upon which appellant seems to base her right. These statutes show the existence in the mind of the legislature of a difference between ground rents and other estates in land. The Act of March 26, 1785, 2 Sm. Laws 299, sec. 2, provides: "That, from henceforth, no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments, after the expiration of twenty-one years next after his, her or their right or title to the same first descended or accrued; nor shall any person or persons whatsoever have or maintain any writ of right, or any other real or possessory writ or action, for any manor, lands, tenements or hereditaments, of the seizin or possession of him, her or themselves, his, her or their ancestors or predecessors, nor declare or allege any other seizin or possession of him, her or themselves, his, her or their ancestors or predecessors, than within twenty-

one years next before such writ, action or suit, so there-after to be sued, commenced or brought." That there is a wide difference between them is apparent from even a casual reading of the acts. The act of 1785 has reference to a fee or possessory right in land. This is a right which can be demonstrated; its exercise is visible to all. But a rent charge is an incorporeal hereditament, conferring no right of possession except in the event of the failure to make the payment secured by the charge. ·It is manifest that evidence of possession can be obtained from living witnesses, persons residing in the vicinity. Evidence of the payment of rent is usually in the possession only of the person who pays. It is evident that there is such a difference in the estates that a difference in their treatment is required, and in our opinion, any attempt to treat and control ground rents as the courts treat titles in fee or possessory rights in real estate will lead to erroneous conclusions in the ground rent cases.

But let us suppose for the argument's sake that we are mistaken in our construction of the act of 1855 and that ordinarily a defendant could in such a case defeat the plaintiff's right to recover by showing that from the date when the first payment of the ground rent became due a period of more than twenty-one years elapsed without any payment or lawful demand being made upon the person who was obligated to pay the rent. Yet, in our opinion, the present case does not fall within that rule. We think that the present appellant is estopped from asserting, under the admitted facts, that the ground rent claimed in this suit is extinguished or irrecoverable. We cannot better summarize the facts upon which we reach this conclusion than by quoting from the printed argument of the learned counsel for the appellee:

"Appellant's title to the land is derived from John Roberts, the elder, who took title to the land under the deed reserving the ground rent in question. Her title came through John Roberts, the younger, and Stella M. Roberts Taft, respectively the son and granddaughter

of John Roberts, the elder.  The ground rent was reserved to Eliza Roberts who by her will gave a life estate to John Roberts, the elder, in her entire property and after his death, gave one equal moiety thereof to his children in fee.  This ground rent was sold to the appellee after the death of John Roberts, the elder, and Eliza Roberts, by the trustee appointed under partition proceedings, brought at the instance of appellant's predecessors in title in Eliza Roberts' estate.  John Roberts, the younger, and Stella M. Roberts Taft, therefore, received one-half of the proceeds of the sale of this ground rent.  It was sold as an irredeemable ground rent for the price which such rents bring, and these two persons, under whom the appellant claims, received the benefit of one-half of the price of the sale.  In order to induce appellee to buy, John Roberts, the younger, made an affidavit in which he swore that his father died seized of the premises subject to the ground rent and that the affidavit was made in order that the ground rent might be insured.  He and his niece recognized their obligation to pay, and did pay, the rent so long as they owned the real estate; and they sold it expressly under and subject to that rent.  It is not pretended that the appellant bought without knowledge of the existence of the rent.  She bought intending to set up that the rent was in fact no longer in existence in spite of the fact that those from whom her title was derived had procured its sale as a valid rent and had shared in the proceeds thereof.  They had received the benefit of the sale after the period when, if the appellant's contention is correct, the rent was irrecoverable; but she, claiming under them, and with knowledge of the fact that they had received this benefit seeks to avoid liability."  In our opinion she cannot succeed in this because she is in privity of title with her predecessors so that she stands in their shoes and she is estopped from disputing the appellees' right to look to her property for the ground rent claimed in this suit.  The general rule as to equitable estoppel is stated in Bigelow on Estoppel

(5th ed.), pages 556, 557 and 569: "In the classes of cases arising under this head, the estoppel to deny the fact does not turn in any way upon any contract to treat the fact as settled but upon conduct which it would be unrighteous and unjust to allow the author of it to repudiate." The rules on estoppel are set out in 16 Cyc. 726, and 11 Am. & Eng. Ency. of Law (2d ed.), 420. In discussing the application of this rule it is said in the latter work (p. 429): "Also it seems to be well established, as a general rule, that if a man knowingly suffers another to purchase and expend money under an erroneous opinion of title, though he does it passively by looking on, without making known his claim, he shall not afterward be permitted to exercise his legal right against that person. This rule is especially applicable where the owner has encouraged the parties to deal with each other in such sale and purchase." Upon this question see also 16 Cyc. 773. That any such estoppel extends not only to the person who made the representation but to anyone in privity with him has been held since the earliest times. In the late English work on the subject, Everest on Estoppel (2d ed.), page 6, the rule is thus stated: "Persons deriving their titles through others are estopped by the same matters as estopped the parties through whom they claim." We find many cases upon the question of estoppel in the decisions of the courts of our own state. Some of these decisions are Stroble v. Smith, 8 Watts, 280; Wilkins v. Anderson, 11 Pa. 399; Duff v. Wynkoop et al., 74 Pa. 300; Robertson v. Hay, 91 Pa. 242; Hayes's App., 195 Pa. 177; Hutchison v. Gill, 91 Pa. 253; Griffiths v. Sears, 112 Pa. 523; Woodward v. Tudor, 81 * Pa. 382; Putnam v. Tyler, 117 Pa. 570; Maple v. Kussart, 53 Pa. 348; Miller's App., 84 Pa. 391; Marshal v. Foltz, 221 Pa. 570.

We think these authorities establish the doctrine that, on the facts of the present case, John Roberts, the younger, and Stella M. Roberts Taft were clearly estopped from denying that the ground rent purchased by the

appellee was valid and subsisting and that the present appellant, having derived her title through the Roberts, is estopped from making the defense which her very able counsel has presented for her. This conclusion renders it unnecessary for us to discuss the questions suggested by appellant's counsel in his third proposition, that if the ground rent exists it is redeemable and that a sufficient tender was made to extinguish the same, and that, therefore, the judgment should be reversed on that ground.

The assignments of error are overruled and the judgment is affirmed.

HEAD, J., dissenting:

Even if the Act of April 27, 1855, P. L. 368, could be fairly regarded as an isolated enactment, it would be difficult for me to find, within the limits marked by its expressive language, a foundation to support the interpretation of it declared in the majority opinion. To my mind this difficulty becomes insurmountable if we view that act as but one step in the long march of legislation, the ultimate object of which was to "unfetter" real estate and make it freely alienable. That it must be so viewed, its every section seems to assert. The first and perhaps most familiar one declares that thereafter every estate tail, no matter with what solemnity created, "shall be taken and construed to be an estate in fee simple, and as such shall be inheritable and freely alienable." Its seventh section, breathing the same spirit, provides: "That in all cases where no payment, claim or demand shall have been made on account of any ground rent for twenty-one years, . . . . a release or extinguishment thereof shall be presumed." As if to prevent any discussion as to the nature or effect of this presumption, these words are added, viz.: "and such ground rent shall thereafter be irrecoverable."

It seems clear to me then that the legislature plainly defined a condition which, if permitted to exist for more than twenty-one years would inevitably, ex vi statuti, be

followed by the declared result that then, in such event, "a release or extinguishment thereof (of the ground rent) shall be presumed and such ground rent shall thereafter be irrecoverable." The appellant here relies not merely on the presumption created by the statute, which, as was pointed out by Mr. Justice PAXSON in Biddle v. Hooven, 120 Pa. 221, is a legal presumption "which cannot be rebutted," but on the admitted and thus established fact that the condition defined by the act had continuously existed for a period of half a century. Certainly then, had the owner of the alleged ground rent undertaken, for example in 1899, to have maintained an action for the recovery of the rent, his way would have been absolutely barred by the flat prohibition of the statute.

But even in passing the act of 1855, the legislature, in its wisdom, had not yet determined that the time was ripe for the final step putting it beyond the power of the owner of land to charge it with an irredeemable ground rent. It would therefore have been competent at any time, after the act of 1855 and prior to the act of June 24, 1885, to which I shall later refer, for the owner of the land to have again bound it by a ground rent, in all respects similar to the one which could no longer be enforced by reason of the act of 1855. And, if the parties could accomplish that object directly, it might be argued with some plausibility that they could reach the same result by some indirect action, payment, demand, etc., plainly indicative of their mutual intent. This question, however, is not before us.

But in 1885, in the act already referred to, the legislature finally determined that the existence of irredeemable ground rents constituted an obstacle to the evolution and development of the public policy of the state and absolutely prohibited their future creation. "Whereas, The policy of this commonwealth has always been to encourage the free transmission of real estate and to remove restrictions on alienations; Therefore, Section 1. Be it enacted, etc., That from and after the passage of this

act, no irredeemable or nonextinguishable ground rent shall be charged upon, or be reserved out of, or for any land within this Commonwealth." At the time that declaration of public policy was made and the prohibition necessary to effectuate it was announced, what was the status of the ground rent here sued for? By the admitted facts, for a continuous period of thirty-six years after its creation in 1849, no payment, claim or demand had been made on account of it, and as I view it there was no possible way by which the ground rent owner could have recovered anything, because the act of 1855 had so emphatically declared that under such circumstances the ground rent should be irrecoverable. But the act of 1885 had wrought an entire change in the control of the parties themselves over the land in question and had declared that no matter what their purpose, intention or desire might be, it was no longer competent for them in any way to thereafter fasten upon land the fetter of an irredeemable ground rent. There was no way in which the ablest of counsel or the most astute of conveyancers could have aided John Roberts, in 1900, to create an irredeemable ground rent. The conclusion of the majority opinion that he could accomplish by the mere statement of an alleged fact in an affidavit which he filed, what he could not do by the most formal and solemn instrument legal talent could devise, I am wholly unable to accept.

The doctrine of estoppel has its foundation in that sense of common justice and fair dealing recognized and upheld by most civilized men. If John Roberts, by his declaration that the property he owned was subject to a ground rent, induced another to purchase that rent, he ought not to be permitted thereafter to deny it to the injury of that purchaser. But while the landowner thus declared that his land was subject to a ground rent, he did not undertake to say that such rent was an irredeemable one, and even if he had so stated and honestly desired to subject to it such rent, he was powerless to effectuate that desire. Presumably both he and the purchaser of the

ground rent knew the law, and neither of them had any right to assume that the result of his declaration could accomplish anything more than to bind the land with a ground rent redeemable in the manner provided by the statute. The present owner of the land, who, I am willing to concede, stands in the shoes of John Roberts, because he bought with due notice in the line of his title, contends that if his land be burdened at all, it can at most be subject only to a redeemable rent. He has undertaken to redeem that charge by tendering to the plaintiff and thereafter bringing into court the amount of money at which the statute capitalizes such ground rent, in the absence of a provision of that character made by the parties themselves. I cannot escape the conclusion that the learned trial judge should have permitted or directed the plaintiff to take this money out of court and then entered judgment in favor of the defendant. This would give to the doctrine of equitable estoppel reasonable effect and operation; would, as I view it, do justice to all parties concerned, and prevent a conclusion which I am wholly unable to harmonize either with the plain legislative command or the sound public policy on which it was based.

I have not thought it necessary to again go over the decisions so elaborately reviewed in the majority opinion. I think it sufficient to say that I do not understand the majority opinion even to contend that any one of them is of binding or controlling force in the determination of the exact question raised by this record. No one of them was predicated on such a state of facts as we have now before us, and sound conclusions can rarely be reached by attaching undue importance to forms of expression which were uttered always with reference to the state of facts then under consideration.

For the reasons herein outlined as briefly as possible, I am, with all due respect for the majority of the court, unable to concur in the conclusion they have reached.

RICE, P. J., and HENDERSON, J., concur in this dissent.