# Gould *versus* Lee.

1. Parol evidence is not admissible to alter or contradict a writing, but may be received to explain and define the subject of a written agreement.
2. In commercial transactions a house that receives and sells goods for another, guarantees the price, but gives no guaranty to make the price good. The credit of the house is pledged to the consignor and their credit is accepted as satisfactory when the consignment is made.

March 19th and 20th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., absent. ·

Error to the Court of Common Pleas of *Monroe county*.

This was an action of replevin, commenced April 9th 1860, by David W. Lee, surviving partner of the firm of Charles M. Leupp & Co., against Jay Gould, for 1200 sides of sole leather.

The sheriff returned to the writ, "replevied and claim property bond given same day." The defendant pleaded "*non cepit;*" afterwards he pleaded property, and subsequently added the plea "property in himself and the plaintiff;" also a special plea that on the 21st of August 1860 the plaintiff, by release in writing, and under his seal, released the defendant from the action : also, that by an agreement between the plaintiff and defendant, in writing and under their seals, it was stipulated that the plaintiff should release the defendant from all claims, with certain exceptions, and averring that this was not an excepted claim.

The case, on a first trial, resulted in a verdict for the defendant and the judgment was reversed : see Lee *v.* Gould, 11 Wright 398.

The firm of Charles M. Leupp & Co. consisted of Charles M.

[Gould *v.* Lee.]

Leupp and David W. Lee. On the 1st day of February 1859 that firm and Gould entered into the following agreement:—

"It is mutually agreed between Charles M. Leupp & Co. and Jay Gould that Leupp & Co. shall stock the tannery of said Gould, known as the Gouldsboro tannery, and situated at Goulds. boro, Luzerne county, Pennsylvania, with hides for the term commencing at date until the 1st day of April 1860—in all fourteen months, say from ten to twenty-five thousand hides per annum, as both parties may deem expedient.

"Conditioned, that J. Gould is to tan said hides into hemlock sole leather in a good and workmanlike manner, and to return the leather made from them, in a reasonable time to said Leupp & Co., and to receive for such tanning and transporting, both ways included, five to five and a-half cents per pound, as the account made up in the usual manner may pay. Leupp & Co. to receive five per cent. for purchasing the hides, and six per cent. commission for selling and guaranteeing the sales of the leather, and the loss under five cents and the profits over five and a-half cents per pound for tanning, to be equally divided. The hides and leather to be kept insured at the joint expense of the parties."

Hides were furnished by Leupp & Co. under this agreement until October 1859, when Leupp died.

The Gouldsboro tannery was owned by Leupp, Lee and Gould as. tenants in common: they were also joint owners of the personal property there: the business for this firm having been done under the name of J. Gould.

All the hides furnished to this tannery were from Leupp & Co., except 2000 from John B. Alley, of Boston, and a very few from ordinary country tanneries.

On the 19th of December 1859 Leupp & Co., represented by Lee, entered into an agreement with Gould to sell him the Gouldsboro tannery and all its personal property for $60,000, payable at the rate of $10,000 per annum, with other stipulations not necessary to be detailed.

Difficulties arising between the parties, Lee, on the 14th of April 1860, filed a bill in the Court of Common Pleas of Luzerne county, in equity, for an injunction against Gould to protect the personal property at Gouldsboro tannery, in which he claimed an interest.

The leather in controversy was transported about the same time from the Gouldsboro tannery to the barn of Samuel Case, in Monroe county, near the Tobyhanna station, on the Delaware, Lackawanna and Western Railroad, and thence shipped by that road, on the 26th of April 1860, to Stroud J. Hollingshead, Philadelphia.

On the 21st of August 1860 an agreement was made, as follows:—

[Gould *v.* Lee.]

" Agreement.   Luzerne county Common Pleas.—David W. Lee *v.* Jay Gould, J. Allen Dubois and William M. Evarts, as executor of the last will and testament of Chas. M. Leupp.   In equity.

" It is hereby stipulated and agreed by and between the parties to this action, that all the leather, which, in pursuance of the order heretofore made therein, has been consigned to Bullard & Co., New York, in the name of Walter G. Sterling, of Wilkesbarre, and the proceeds of the same, be immediately delivered and paid over to David W. Lee, surviving partner of Charles M. Leupp & Co., to be held and disposed of at his pleasure—the defendant, Gould, and the complainant, David W. Lee, having made an arrangement by which the said Gould has relinquished his interest in said leather and proceeds, and in consideration of which, and of the leather, to be also delivered as hereinafter set forth and specified, the said David W. Lee, surviving partner of Chas. M. Leupp & Co., has released said Gould from all loss in the business of said tannery at Gouldsboro, except as hereinafter provided for, viz. : that the present indebtedness of the tannery shall be paid and discharged at the rate of two-thirds of said liabilities by Charles M. Leupp & Co., or the surviving partner, David W. Lee, to one-third thereof by Jay Gould.   And it is further stipulated that the said Gould shall release Charles M. Leupp, David W. Lee, or Charles M. Leupp & Co., and that said Charles M. Leupp, David W. Lee, or Charles M. Leupp & Co. shall release said Gould from all claims or demands of any name or nature, excepting as above and hereinbefore stated, and that an order to the foregoing effect may be made ex parte upon the filing of this stipulation.   It is further agreed and stipulated that the residue of the leather which was in or about the Gouldsboro tannery at the time of the granting of the injunction or order herein of the second of May 1860, and which has not heretofore been sent forward to Bullard & Co. (excepting the leather belonging to John B. Alley or his firm, all of which has been delivered to said Alley or his firm), shall be permitted to go forward to Bullard & Co., in the name of said Walter G. Sterling, in like manner as the shipments heretofore made, and that the same or the net proceeds of the same be forthwith upon receipt, paid or delivered over to David W. Lee, surviving partner of Charles M. Leupp & Co., reserving a sufficient sum from the proceeds of said leather to pay the share of the said Charles M. Leupp & Co., of the liabilities hereinbefore specified, by consent of the said complainant, David W. Lee.   And J. Gould doth hereby irrevocably authorize and appoint E. L. Dana, of Wilkesbarre, as his attorney, and David W. Lee doth hereby irrevocably authorize and appoint A. T. McClintock, of Wilkesbarre, as his attorney or solicitor, to consent to the making of an order to the effect hereinbefore described, either all or at one time, or from time to time.

[Gould *v*. Lee.]

"And it is further stipulated that such order or orders may embrace any other qualifications or conditions which may be required by the court, provided the same impose no new obligations upon the parties. It is further stipulated and agreed between the parties, that nothing herein contained shall affect an alleged claim against the late firm of Pratt & Gould on behalf of the said firm of Charles M. Leupp & Co., amounting to ten thousand dollars or thereabouts.

"Dated August 21st 1860.    }   D. W. LEE,    [SEAL.]
     In witness,        }    JAY GOULD."   [SEAL.]
    H. D. SNYDER.       }

The contract of December 19th 1859, for the purchase by Gould of the Gouldsboro property was cancelled, by agreement in writing, on the 21st of August 1860.

On the trial, before Barrett, P. J., the defendant offered to show the record of a foreign attachment, Isabella Lee *v*. David W. Lee, survivor of Leupp & Co., in which the bail demanded was $9000, also entry of judgment to a large amount against Lee for the purpose of showing " the inability of Leupp & Co. to afford Gould, as bailee, security for expenses chargeable to the goods." The offer was rejected and a bill was sealed.

The leather was afterwards, May 4th and 5th, delivered to William Musser & Co. to sell on commission. On the 23d of May the leather was attached in the hands of Musser in a foreign attachment at the suit of Sheppard Knapp against Lee as survivor of Leupp & Co., Gould, Hollingshead and Musser being garnishees. In this case a judgment was confessed by Lee for $4087.76. A scire facias issued in this attachment against the garnishees, was marked discontinued and settled, by virtue of an agreement between Knapp and the garnishees, Lee representing Knapp.

In rebuttal the plaintiff called Henry W. Snyder, a subscribing witness to the two agreements of August 21st 1860, and offered to prove by him what was said by the parties at the time of signing the agreements; that " the leather for which this suit was brought, was expressly excepted from the agreement and that Jay Gould was to pay to D. W. Lee, the plaintiff, $4000 in settlement of this suit, whereupon it was to be discontinued. That said sum of $4000 was to be paid to plaintiff or to this witness for the plaintiff at .the end of two weeks from the said day, when the debts of the tannery were to be ascertained by witness, and that at the end of the two weeks witness called on Jay Gould at the tannery and that Jay Gould was then willing to carry out part of the stipulation, but not the whole of it. That the object of the agreement was to have the leather released, and allowed to go to market released from the operation of the equity suit in Luzerne

[Gould *v.* Lee.]

county." The court admitted the offer against the defendant's objection and sealed a bill.

The witness stated: "There was an agreement made by the parties at the time of signing the agreement of 21st August 1860, in reference to this leather. It was at the time reduced to writing. It was a third paper executed at the same time; the paper was drawn by myself; it was signed by the parties Lee and Gould—was witnessed by me and placed in my hands for safe keeping, and remained in my hands until the winter of 1864–5; I then destroyed it; I then received a letter from the two contracting parties requesting me to destroy it."

The plaintiff then asked the witness " how many different subject-matters did that contract treat of ?" The defendant objected to the question; the court permitted it to be put and sealed a bill.

The witness having stated that the contract related to three different matters, the plaintiff offered to prove that " the three matters were: 1. The leather involved in this suit. 2. A settlement of affairs between Lee and Gould of their accounts. 3. A sale by Lee and a purchase by Gould of the tannery property at Gouldsboro. And that the object the parties had in view in destroying that contract was to get rid of the liability under the third clause in the agreement."

The offer was allowed against the objection of the defendant and a. bill was sealed.

The witness testified, that by the agreement it was provided that two weeks after its date he was to meet Gould, who was then to pay $4000 to him, as agent of Lee, for the leather in controversy, and Lee was to stop the replevin suit and close it up; that the accounts between the parties were to be completely adjusted; the third clause was a sale of two-thirds of the tannery to Gould.

The plaintiff submitted the following points :—

1. Even though the jury should find that there was a tanning copartnership between D. W. Lee, Charles M. Leupp and Jay Gould, under the firm name of Jay Gould, yet neither the tanning contract of 1st February 1859, or any other evidence in the cause, shows any copartnership composed of Jay Gould and the mercantile firm of Charles M. Leupp & Co.

2. The contract of the 1st of February 1859 was a contract of bailment, and was no less a contract of bailment if made with a partnership in the name of Jay Gould than if made with Jay Gould individually.

3. Upon the death of Charles M. Leupp all the rights, remedies and personal property which were of the firm of Charles M. Leupp & Co., as bailors or otherwise, vested in David W. Lee as survivor.

4. The right of property in the leather in dispute was in Charles M. Leupp & Co. and not in Jay Gould or in any firm

under the name of Jay Gould, and upon the death of Leupp this right of property vested in the surviving partner of the firm of Charles M. Leupp & Co. and not in the surviving partners of any alleged firm in the name of Jay Gould.

5. If the jury believe that the leather in dispute was removed from the tannery by defendant in violation of his contract and not with the intent to forward the same directly to plaintiff, in New York, the right of possession immediately vested in plaintiff and joined with the right of property—and replevin is a proper remedy.

6. The contract of 21st August 1860, upon its face was drawn and executed to be filed in and operate upon the suit in equity in Luzerne county, and not upon the present cause.

7. If the jury believe the testimony of H. D. H. Snyder, Jr., the leather in dispute was specifically excepted from the operation of the contract of 21st August 1860, and provided for in another paper executed at the same time, and the destruction of this latter paper, between two and three years afterwards, did not bring this leather under the provisions of the contract of 21st August 1860, first mentioned.

All which points were affirmed by the court.

The defendant also submitted, amongst others, the following points:—

3. The agreement not being signed by Charles M. Leupp individually and having no provision for its continuance, defendant had the right after Leupp's death to hold the leather until guaranty tendered, such as the contract contemplates, whether it be viewed as creating a bailment or partnership.

10. The proceedings in the Supreme Court at Philadelphia in the case of Shepherd Knapp *v.* David W. Lee, who survived Charles M. Leupp & Co., defendants, William Musser *et al.*, garnishees, by attachment against the sides replevied in this suit, and the judgment confessed in said attachment and settlement thereof by said Lee, are a bar to the recovery in this action of replevin.

11. If the jury believe that the leather replevied was in the possession of David W. Lee and Jay Gould as surviving partners at the time of writ issued, plaintiff cannot recover, for in this case plaintiff must establish his title with exclusive right of possession in himself and not having done so he fails in this action.

The court, after referring to some preliminary facts in the case, charged:—

" [The business, however, was continued by the surviving partner of the firm with Jay Gould up to March 1860.] Then a difficulty occurred between the parties. There was a quantity of leather on hand at the time. It is not in dispute that the leather

[Gould v. Lee.]

was made from hides furnished by Charles M. Leupp & Co. under the contract of February 1st 1859.

"It is claimed that the tanning contract made Charles M. Leupp & Co. partners with Jay Gould. As to third parties it would be difficult to give it any other construction. They agreed to be jointly interested in the profits and loss of the enterprise, and creditors might with great justice have charged them as partners. But we are dealing with the parties to the contract, and hence the construction placed upon it should be that intended by the contracting parties. In view of the parol evidence given in reference to the understanding of the parties and their manner of doing business under the contract, the jury may find that they were partners to the extent of the profits expected to accrue from it.

"Charles M. Leupp, David W. Lee and Jay Gould were tenants in common in the real estate constituting the 'Gouldsboro Tannery,' and jointly owned the personal property belonging to and connected with it. If the declarations of the living parties are believed, they were doing business there under the firm name of 'Jay Gould.' The fact of their being tenants in common of the real estate did not of itself make them partners in the business carried on at the tannery. If they were partners as alleged, it did not necessarily carry into that firm the partnership firm of 'Charles M. Leupp & Co.,' of New York. The firms would remain distinct in character as they were in business. One was composed of two members and the other of three. One situated in Pennsylvania and the other in New York. One engaged in manufacturing leather and the other in buying and selling the manufactured article. But regarding them as partners in the general business of the tannery, does it prevent Jay Gould from becoming the bailee of Charles M. Leupp & Co. for the hides contracted for? We think not. [The contract as between the parties is to be construed as they understood it. They evidently regarded it as a contract of bailment and so acted under it for months. The furnishing of hides, tanning and returning the leather and the accounts made up and furnished to the defendant, show how they regarded the contract. It is not, therefore, material to this issue whether the name of Jay Gould represented an individual or a firm.] The contract must be enforced as the parties have written it. The intention undoubtedly was that Charles M. Leupp & Co. should be the owners of the hides and the leather manufactured from them.

"Charles M. Leupp & Co. were simply the bailors of Jay Gould, and as such the rights of the firm survived to David W. Lee. Jay Gould, the bailee, agreed to tan the hides and return the leather to the bailors within a reasonable time. The possession for that special purpose was in Jay Gould. If the jury

[Gould *v.* Lee.]

believe that Jay Gould retained the leather an *unreasonable time,* or if he so acted in the *removal of it,* as to show his determination not to return it to the bailors, then by his acts of negligence or malfeasance he parted with the right of possession, and replevin may be maintained. In either case the rightful owner of the property was entitled to the possession. The question of time and of the intention of the defendant are purely questions of fact for the jury. Does the conduct of Gould in removing the leather to the barn of Case, satisfy the jury that he did not intend to return it to New York within a reasonable time ? Was it in violation of the terms of his contract ? If so, then he forfeited his right to the possession. The defendant had no lien upon the leather for the labor bestowed upon it. By his agreement he waived that right when he stipulated for a future day of payment. [Nor had he the right to call upon the bailors for security before delivering the leather. Even if he might have claimed that right in consequence of the death of C. M. Leupp he did not do so. Security was not refused because it was not demanded.]

" The jury are instructed that if the leather was retained an unreasonable time, the plaintiff may recover in this form of action, or if the defendant was guilty of malfeasance in removing the leather he may recover, unless by the subsequent agreement of the parties he is prevented.

" The writ of replevin was executed on the 9th day of April 1860. The parties were then litigating their rights in Luzerne county in a court of equity. On the 21st day of August 1860, an agreement was made and signed by the parties intended to be filed in that case, which was done. It embraced a settlement between the parties including " *all the leather in or about the Gouldsboro Tannery on the 2d day of May* 1860." The defendant contends that the leather in controversy in this suit was included in that agreement of settlement. It was at Case's barn on the 2d of May, 14 miles distant from the tannery, if it had not already been sent to Philadelphia. The parties well knew where it was and that this suit was pending for it. Other things of less value and wholly disconnected with the suit in Luzerne county were named in that agreement. [Why attempt then to include so important an item in the vague terms of ' in or about the tannery ?' Is it likely that the parties intended to include $4000 worth of leather 14 miles distant in another county by such expressions ?] But we are not left to construe this written agreement alone by the language employed. Parol evidence has been offered to explain it. The evidence of H. D. H. Snyder, if believed by the jury, is to the very point. Not only was the leather in dispute not intended to be included, but it was expressly excluded by a written agreement bearing even date with the one filed. True that written agreement was afterwards rescinded and

[Gould v. Lee.]

destroyed by consent of both parties, because, as Snyder says, it contained other stipulations besides the one named. Although destroyed, the contents of the paper are evidence for the purpose of ascertaining the meaning of the parties to the contract already in evidence. It is important only for the purpose of explaining the terms ' in or about the tannery.' If the jury believe the evidence of Snyder, then the leather embraced in this suit was not settled for.''

There was a verdict for the plaintiff, September 27th 1866, for $4000.

The defendant having removed the case to the Supreme Court, assigned for error the rulings as to the evidence, the answers to the points of both parties and the parts of the charge included in brackets.

*M. H. Jones,* for plaintiff in error, cited Bouvier's Law Dict., *Exception;* Whart. Dig. Sup. 1865, p. 472 ; 9 Am. Law Reg. 419 ; Story on Bailments, §§ 9, 109, 121, 202, 203, 206, 207, 418, 419 ; Dalzell v. Crawford, 1 Pars. 45, 2 P. L. J. 17 ; Story on Partnership 1 ; Barring v. Dix, 1 Cox 107, 212 ; 2 Kent's Com. 492, 507 ; Wells v. Ross, 7 Taunt. 403, 2 E. C. L. R. ; 2 Kent's Com. 604 ; Story on Bailments, §§ 184, 190, 114 ; Collyer on Partnership 62, note 16, 114 ; Canfield v. Hard, 6 Com. R. 180 ; Reinheimer v. Hemmingway, 11 Casey 438 ; 2 Greenl. Ev. 222, 229 ; Templeman v. Case, 10 Mod. 24 ; Wilson v. Ducket, 2 Id. 61 ; King v. Humphries, 10 Barr 217.

*G. M. Harding,* for defendant in error, cited Lee v. Gould, 11 Wright 398 ; Hurst v. Kirkbride, 1773, cited in Wallace v. Baker, 1 Binn. 610 ; Hill v. Ely, 5 S. & R. 365 ; Cozens v. Stevenson, Id. 421 ; Birchfield v. Castleman, Add. 187 ; Oliver v. Oliver, 4 Rawle 141 ; Hultz v. Wright, 16 S. & R. 346 ; Parke v. Chadwick, 8 W. & S. 98 ; Caulk v. Everly, 6 Wh. 305 ; Renshaw v. Gans, 7 Barr 119 ; Woods v. Wallace, 10 Harris 176 ; Poorman v. Kilgore, 2 Casey 369 ; Barnhart v. Riddle, 5 Id. 97 ; Johns v. Battin, 6 Id. 84 ; Reitenbaugh v. Ludwick, 7 Id. 131 ; Miller v. Fitchthorn, Id. 252 ; Chalfant v. Williams, 11 Id. 212.

The opinion of the court was delivered, May 13th 1867, by WOODWARD, C. J.—When this case was here in 1864 (11 Wright 402) we decided that, under the original contract between Charles M. Leupp & Co., of one part, and Jay Gould, of the other part, dated February 1st 1859, David W. Lee, as surviving partner of the firm of Leupp & Co., was bailor of the hides in question, and, as such, entitled to maintain replevin for them.

This disposed of the substantial questions in the case, except

[Gould *v.* Lee.]

one, which was, whether Gould had been released from liability for the 1200 hides replevied by the agreements entered into between him and Lee on the 21st August 1860.

Let us see how this question stands upon the evidence. On the 7th of April 1860 the replevin issued out of the Common Pleas of Monroe county was laid upon 1200 hides in Case's barn, to which Gould had carried them from Goldsborough, under circumstances that indicated a disposition to convert them to his own benefit. On the 14th of April 1860, Lee filed a bill in equity in the Common Pleas of Luzerne county for an injunction to protect other personal property at Goldsborough in which he claimed an interest as owner, and as bailee of one John B. Alley, of Boston, who had furnished hides to be tanned at that tannery.

On the 21st of August following, Lee and Gould made a written agreement, which is entitled of the equity suit, and which manifestly had for its object the settlement of that suit.

The leather to which this agreement related is described as the leather which, in pursuance of a previous order of the court, had been consigned to Bullard & Co., New York, in the name of Walter G. Sterling, of Wilkesbarre, and the leather still at Goldsborough, which was to go forward to Bullard & Co. in the same manner, excepting the leather belonging to John B. Alley or his firm. Very manifestly this description of the subject-matter, both of the equity suit and of the agreement to settle it, did not embrace nor refer to the 1200 hides which had been replevied in Monroe county. But the agreement contained also mutual releases of the parties from all claims or demands of any name or nature, excepting as above stated. Had the premises included the replevied hides, these general words might be construed to embrace the replevin suit; that suit and its hides do not seem to have been before the minds of the contracting parties, and if the defence of accord had stood upon this paper alone, it may well be doubted whether it could be sustained. But all doubt on this head was removed by the parol testimony of Snyder, who swore that the leather for which the replevin suit was brought was expressly excepted from the agreement, and that another agreement of the same date, which was afterwards destroyed by him with the consent of the parties, related to this leather and some other matters. If this evidence were believed, the general terms of release employed in the agreement which settled the equity suit could with no propriety be held to embrace the present suit or its subject-matter. But the admission of the parol evidence is very earnestly complained of. Was there any error in that?

Parol evidence is not admissible to alter or contradict what is written, upon the very obvious principle that the writing is the best evidence of the intentions of the parties; but parol evidence

[Gould *v.* Lee.]

has many times been received to explain and define the subject-matter of written agreements.    Herein is no contradiction.

And when a writing has been lost or destroyed its contents are in general only provable by parol.    Snyder was the scrivener, the subscribing witness, the depositary and the destroyer of the second agreement of August 21st, and was therefore the best possible witness to its contents.    The proof of the contents of the paper that was burned limited the operation of the paper that survived, and showed that none of its terms could properly be permitted to release the replevin suit.    This evidence therefore extricated the case from the only doubt that attended it when it was here before.

Several assignments of error, founded on bills of exception to evidence and on parts of the charge, involve a misconstruction of that clause of the original agreement of February 1st 1859, which relates to a guaranty of the sales of the leather.    It is not a covenant of guaranty, but a fixing of the rate of commission for selling and guaranteeing in the ordinary course of the commission business.    In commercial transactions the house that receives and sells any commodity for another party guarantees the price, less the agreed commissions, but gives no security to make this guaranty good.    The responsibility of the house and of every member of it is pledged to the consignor, and their credit is accepted as satisfactory when the consignment is made.    So far as Gould had any property in the leather tanned at Goldsboro', he made Leupp & Co. his factors for the sale of it by his agreement; and though he might perhaps have refused to ship to them or have stopped the goods in transitu in case of their evident insolvency, yet there was nothing in the evidence offered to justify him in secreting a large quantity of leather in Case's barn.

That was the point which he had to defend and the rejected evidence would not have served him, and therefore he was not injured by its rejection.

In looking through the 18 errors assigned, we see nothing else that requires special comment, and therefore the judgment is affirmed.