367 A.2d 314

**Annie M. POWELL, Appellee,**

v.

**C. E. POWELL, Appellant.**

Superior Court of Pennsylvania.

Argued April 13, 1976.

Decided Nov. 22, 1976.

Caram J. Abood, Abood, Rodkey & Eckel, Richard J. Russell, Johnstown, for appellant.

Harry A. Englehart, Jr., Ebensburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from a decree of the Court of Common Pleas of Blair County, Civil Division, granting wife-plaintiff's motion for judgment on the pleadings in

an action for specific performance. Husband-appellant, Mr. C. E. Powell, was ordered to execute a deed conveying to his wife, Mrs. Annie Powell, appellee, a clear and marketable title to two lots in Volusia County, Florida.

The action arises from an agreement between the parties dated September 8, 1960. The parties were separated at the time of the execution of the agreement and divorced on a date not appearing in the record. The agreement provides for the division of certain properties they owned. The clause in the agreement dealing with Florida real estate specifically enumerates nine properties, six of which Mr. Powell was to receive and three of which were to go to Mrs. Powell, with Mrs. Powell also receiving "All other lots in the State of Florida now owned by the parties, except those above listed."

On December 4, 1971, Mrs. Powell filed a complaint in equity, averring the following: the lots in question had been owned by the parties at the time of the agreement; deeds had been exchanged in accordance with the agreement on November 30, 1960; she discovered in February of 1971 Mr. Powell had neglected to execute a deed for the two lots, and she immediately requested such a deed which Mr. Powell had refused to execute.

Defendant's answer admitted the execution of the contract, the ownership of the lots, and the exchange of deeds, but took issue with plaintiff's claim that she had not discovered the alleged omission until 1971. Under new matter he asserted, *inter alia,* that the action was barred by the doctrine of laches and that plaintiff had waived her rights under the agreement. The latter claim was particularized by his assertion in his motion for summary judgment that the action was barred by the Pennsylvania Act of April 22, 1856, 12 P.S. § 83, which provides in pertinent part:

"No . . . action [shall] be maintained for a specific performance of any contract for the sale of real estate . . . but within five years after such con-

tract was made . . . unless . . . there has been, in part, a substantial performance . . . within the same period."

The court below held, relying on *Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966), that the statute was inapplicable to the contract since it was between husband and wife. We disagree.

The *Shapiro* decision cited *Morrish v. Morrish*, 262 Pa. 192, 201, 105 A. 83, 86 (1918) for the rule that the statute of limitations will not ordinarily bar relief in a wife-husband situation. The latter case sets forth the rationale behind the rule as follows:

"The best considered decisions upon the subject in hand . . . are to the effect that, owing to the social importance of maintaining the family relation, in suits between a wife and her husband for the protection of the former's property, statutes of limitations, as also presumptions or estoppels by lapse of time do not ordinarily affect the rights of the wife, since she cannot be expected to treat her husband as a stranger; as certain courts have well said, any other policy would be apt to beget disagreements and contentions in the family fatal to domestic peace." [Citations omitted.]

The policy of preserving family harmony has little application to parties separated and contemplating divorce. Although no Pennsylvania case has answered the question of whether the statute of limitations runs between separated spouses, authorities indicate that of three jurisdictions which have applied the spousal exception rule and which have confronted the question in a factual context similar to that of the instant case, two (New Jersey and the District of Columbia) have answered that the statutory limitation of time does run with respect to estranged spouses.[1] *Givernaud v. Givernaud*, 81 N.J.Eq.

1. A *statute* providing for a spousal exception was held to dictate a contrary result in *Re Leeds and Co.*, 49 La.Ann. 501, 21 So. 617 (1897). See Annotation, 121 A.L.R. 1382.

66, 85 A. 830 (1912); *Posnick v. Posnick,* 160 A.2d 804, 807–08 (D.C.Mun.App.1960). The reasoning of the *Posnick* court is persuasive:

> "Appellant says the statute of limitations is not applicable to actions between husband and wife prior to divorce . . . . This appears to be the general rule, and is based upon the theory that domestic discord would surely follow litigation between spouses, and that one spouse should not be compelled to sue the other for fear that rights would be lost by lapse of time. . . . But we do not believe the rule is applicable under all circumstances. When the reason for the rule does not exist, the rule should not apply. . . .
>
> "In the case before us, according to the wife's own complaint, her husband deserted her without cause on August 15, 1949 . . . and at that time the personal property here claimed was in a restaurant then operated by him; and the desertion has continued since that time. This action was commenced more than eight years after the desertion. In 1951 she successfully sued her husband for maintenance and an accounting. . . . As the trial court in the present action stated, 'these parties have been in constant litigation against each other since 1951.' It would be absurd to say that a rule designed to protect domestic tranquility has any application here. . . . It does not make sense to say that [the wife] refrained from asserting her present claim because of a possibility of reconciliation . . . Whether we apply the statute of limitations or the doctrine of laches, the claim was barred and was properly denied."

A later District of Columbia case dealing with divorcing parties, *Busboom v. Busboom,* 187 A.2d 122 (D.C. Mun.App.1962), approvingly cited *Posnick* but enunciated a caveat to its holding:

> "We hold that the statute of limitations does not bar the present counterclaim. The wife withdrew the

money from the joint account in February, 1958. The parties were then still maintaining some semblance of a marital relationship. For the next year they lived together intermittently in her apartment in the District and attempted to effect a reconciliation but were unable to work out their differences. Without destroying an amicable opportunity to preserve the marriage status, the husband could not, prior to his final departure from the marital abode in March, 1959, bring suit to seek the return of the money which he alleges was wrongfully appropriated by the wife."

Adopting the reasoning of these cases, we hold that the statute of limitations ran against the instant plaintiff from the date of the final separation, a date not within the record. The pleadings indicate that as of 1960, the parties were separated, but are silent as to whether they ever resumed living together before they were divorced. In order that this question may be determined, the judgment on the pleadings is reversed and the case is remanded for trial.[2]

Pa.R.C.P. 1035(c) requires a court faced with a motion for summary judgment to ascertain, upon a determination that summary judgment is improper and a trial is necessary, which facts are agreed upon and which are controverted, and to issue an order which will have the effect of limiting the evidence received at trial to that relevant to the controverted facts. Several conclusions

2. Appellee's argument that the exchange of deeds in November of 1960 constituted "substantial performance . . . within the same period" thereby rendering the statute inapplicable is devoid of merit. This construction of the statute, while grammatically defensible, leads to the absurd result that an action based upon a contract on which there was substantial performance the day after its signing will never be barred. There must have been substantial performance or a written acknowledgment of the obligation within five years from the date of the agreement and the action must be brought within five years from the substantial performance or written acknowledgment to avoid the bar of the statute. For a construction of another Pennsylvania statute using similar language, see *Murphy v. Green,* 48 Pa.Super. 1 (1911).

expressed in the lower court's opinion granting judgment on the pleadings (which simultaneously disposed of defendant's motion for summary judgment) require discussion, as any errors not corrected are likely to recur in the event that our remand with reference to the statute of limitations is not dispositive.

 Defendant contended in his motion for summary judgment that the description of the real property contained in the contract is too vague to support the lower court's decree, and cites *Portnoy v. Brown,* 430 Pa. 401, 243 A.2d 444 (1968) for the well established rule that specific performance will not be granted unless the terms of the agreement are sufficiently set forth and the property to be conveyed is sufficiently identified and described. The sufficiency of the description in the instant agreement depends, of course, on the adequacy of the description of the six enumerated properties to be conveyed to defendant. We agree that these descriptions (e. g., "the big house and three apartments," "the large orange grove") are vague, but since it is agreed that all the properties listed were owned by the parties at the time of agreement, the descriptions are not so hopelessly vague as to defeat a claim for specific performance. While plaintiff cannot use parol evidence to add terms to the original description, such evidence is admissible to clarify the terms of the description, so that the court can act upon it. *Suchan v. Swope,* 357 Pa. 16, 53 A.2d 116 (1947).

 We disapprove of the lower court's summary rejection of defendant's assertion of laches. The court's opinion stated: "[T]here has been absolutely no prejudice shown to the defendant in the instant matter such as would be required in order for the doctrine of laches to be applied." Of course no prejudice has been shown; defendant has been afforded no opportunity to show prejudice. Even if the court meant "alleged" when it used the word "shown," its conclusion cannot be sustained. Since

Pa.R.C.P. 1509(b) [3] provides that in an equity action laches is not waived by the failure to plead it, it can hardly be waived by the failure to plead it with particularity. It is a rare case in which the defense of laches is properly rejected on the pleadings. *Lehner v. Montgomery,* 180 Pa.Super. 493, 119 A.2d 626 (1956). To do so here, particularly in view of the eleven-year delay, was error.

Defendant's New Matter also set forth a general release executed in his favor by plaintiff in June of 1967 and attached a copy. Plaintiff's answer to New Matter stated: "The general release of June, 1967 pertained only to the matters pending in an equity action in the Commonwealth of Pennsylvania." The court below accepted this explanation and ruled that the release did not bar the instant action. This ruling was clearly erroneous. The court was required, in ruling on plaintiff's motion for judgment on the pleadings, to accept the allegations in defendant's answer as true and ignore plaintiff's reply. *Luria Steel & Trading Co. v. Dittig,* 414 Pa. 197, 199 A.2d 465 (1964). The release was the broadest possible: "for and in consideration of mutual releases and covenants and for and in consideration of the sum of five dollars" plaintiff released defendant from "all manner of action and actions . . . claims and demands whatsoever, in law or in equity or otherwise . . . which against Charles E. Powell I ever had [or] now have . . . for, upon, or by reason of any matter, cause, or thing, whatsoever[.]"

It is hornbook law that a general release covers all claims and demands due at the time of its execution which were within the contemplation of the parties. 66 Am.Jur.2d, Releases § 29; *In re Brills Estate,* 337 Pa. 525, 12 A.2d 50 (1944), cert. den. *Betz v. Brills Estate,* 311 U.S. 713, 61 S.Ct. 398, 85 L.Ed. 464, rehearing den.

---

3. Act of June 21, 1937, P.L. 1982.

312 U.S. 714, 61 S.Ct. 730, 85 L.Ed. 1145; *Cockroft v. Metropolitan Life Insurance Co.,* 125 Pa.Super. 293, 189 A. 687 (1937). Whether the claim on the 1960 agreement was within the contemplation of the parties when the release was signed cannot be determined from the pleadings; plaintiff claims long-term ignorance of defendant's non-compliance and defendant asserts that, on the contrary, plaintiff listed the lots in question in a lis pendens action she brought against him in August of 1962 in Volusia County, Florida. The question must be resolved by a determination of the truth with reference to these conflicting allegations and an examination of the facts and circumstances surrounding the execution of the release.[4]

Judgment reversed and case remanded for further proceedings not inconsistent with this opinion.

JACOBS, J., concurs in the result.

HOFFMAN, J., files a concurring and dissenting opinion in which VAN der VOORT, J., joins.

SPAETH, J., files a concurring opinion.

PRICE, J., dissents.

HOFFMAN, Judge, concurring and dissenting:

I agree with the Majority that the lower court erred in granting appellee's motion for judgment on the pleadings in her action for specific performance. I dissent from that part of the Majority opinion adopting the holding in *Givernaud v. Givernaud,* 81 N.J.Eq. 66, 85 A. 830 (N.J. Eq.1912).

---

4. Defendant's brief implies that plaintiff is precluded from asserting the inapplicability of the release by her failure to assert grounds for its reformation—e. g., mutual mistake or fraud. However, delineating the scope of a general release is construction, not reformation; the task before the court is to identify the subject matter of the release. See *Gould v. Lee,* 55 Pa. 99, 108–09 (1867).

The lower court held that the statute of limitations provided in the Act of April 22, 1856, P.L. 532, § 6, 12 P.S. § 83, did not bar appellee's action because the "statutes of limitation and laches ordinarily do not affect the wife's rights against her husband since she cannot be expected to treat him as a stranger." That certainly has been the law of Pennsylvania for many years. *Morrish v. Morrish,* 262 Pa. 192, 105 A. 83 (1918); see also *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966).

The Majority adopts a new rule that, in some instances, the statute of limitations may run against one of the married, but separated parties: ". . . we hold that the statute of limitations ran against the instant plaintiff from the date of the final separation, a date not within the record. The pleadings indicate that as of 1960, the parties were separated, but are silent as to whether they ever resumed living together before they were divorced. . . ." 244 Pa.Super. at 275, 367 A.2d 318.

I agree that in some cases the policy of preserving marital harmony fails as a rationale for sustaining the traditional rule excepting married people from the period of limitations as long as they are married. See, e. g., the factual history as cited by the Majority at 317 in *Posnick v. Posnick,* 160 A.2d 804 (D.C.Mun.App.1960). At the same time, the Majority's rule is too uncertain to permit consistent application. A couple may go through a long and tortuous separation. With increased availability and assistance of professional counselors, a couple may finally separate only after numerous break-ups and reconciliations. Under the Majority's rule, the commencement of the limitation period is elusive, capable only of retrospective analysis. Indeed, parties can discover the commencement of the period only after a finding by the lower court that the couple *finally* separated on a specific date. Such a rule can work obvious unfairness. Cf. 53 C.J.S. Limitations of Actions § 4. In addition, the Majority's rule further erodes the possibility of reconcilia-

tion. Faced with an uncertain date terminating a cause of action, a party is more likely to proceed hastily to court rather than to attempt amicable resolution of the dispute.

Thus, even if the rationale of domestic tranquility fails in some cases, I would reaffirm the traditional rule which permits certain and consistent application.

VAN der VOORT, J., joins in this concurring and dissenting opinion.

SPAETH, Judge, concurring:

I offer this opinion because two points seem to me to require discussion.

1

I agree with the general conclusion expressed by Judge Cercone in his opinion for the majority, that when the "marital unity" has ended, there is no reason why the Act of April 22, 1856, should not apply. This conclusion, however, does not completely answer the argument that even so, given the particular agreement here, the Act does not apply.

In pertinent part, the Act provides:

No . . . action [shall] be maintained for a specific performance of any contract for the sale of real estate . . . but within five years after such contract was made . . .

Thus, the issue is presented whether the agreement here is a "contract for the sale of real estate." As Judge Cercone's opinion for the majority states, the agreement ". . . provides for the *division* of certain properties [the parties] owned." At 316 (emphasis added). The agreement does not provide for the "sale" of real estate. Since words in a statute are to be construed according to their common and approved usage, 1 Pa.C.S.A. § 1903, it is, therefore, at least arguable that the Act is inapplicable. I think we should respond to this argument. My response is as follows.

In construing a statute, one does not consider only common and approved usage; one also attempts to effectuate the legislature's intent. 1 Pa.C.S.A. § 1921. Here, the Act is not a statute of limitation but a statute of repose. *Ross v. Suburban Counties Realty Corp.*, 356 Pa. 126, 51 A.2d 700 (1947). "Such statutes are in the nature of conditions put by the law upon the right given. . . . They bar not only the remedy but the right." *Overmiller v. D. E. Horn & Co., Inc.*, 191 Pa.Super. 562, 570–71, 159 A.2d 245, 248–9 (1960). This characteristic reveals that the legislature's intent was that encumbrances upon titles to real property should be resolved as expeditiously and as finally as possible. Thus the Supreme Court said in *Ross, supra* at 129, 51 A.2d at 701, that "[t]his Act was a statute of repose and was intended to assure greater certainty of title and make secure the enjoyment of real estate." If this intent is to be effectuated, the phrase "any contract for the *sale* of real estate" should be construed broadly so as to include "any contract for *transfer* of real estate."

This conclusion is supported by other considerations. When the parties to a marriage have separated and are contemplating divorce, the amicable resolution of their disputes is to be encouraged. *Schmoker v. Schmoker et al.*, 359 Pa. 272, 275, 59 A.2d 55, 57 (1948). It follows that an agreement providing for the disposition of the parties' property should be given the greatest possible legal effect, which is simply another way of saying that the ability of either party to challenge the agreement should be limited. This purpose will be achieved only if the Act is construed broadly so as to include a contract not only for the "sale" but also for the "transfer" of real estate.

2

The Act provides that the limitation period starts to run from the time "such contract was made." In the case of a separation agreement, the contract will be made prior to "final separation" and therefore during the peri-

278

od of "marital unity". It follows that the limitation period will not start to run from the date the contract was made. The question therefore becomes, When does the limitation period start to run?

In answering this question, I am with the majority. I recognize the force of Judge Hoffman's criticism, that the date of "final separation" may be difficult to determine. On the other hand, on remand it may prove that it is not at all difficult; there may be no question about when the parties so finally separated that all would agree that their marital unity had ended.

In addition, there is another date that should be mentioned. It is the date the parties were divorced. There can be no difficulty in determining that date. Neither can there be any question that as of that date, the marital unity had ended. At least, therefore, the limitation period started to run then.

Accordingly, I join in the majority's remand, but I would add the instruction that the lower court should decide whether the action was barred because it was not brought within five years of the date of divorce.