The CONFERENCE OF AFRICAN UNION FIRST COLORED METHODIST PROTESTANT CHURCH

v.

Willie E. SHELL and St. Paul's African Union First Colored Methodist Protestant Church of Lancaster, A/K/A St. Paul A.U.M.P. Church, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 1994.

Decided May 17, 1995.

Samuel M. Mecum, for appellants.

Christina L. Hausner, for appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

SMITH, Judge.

The question presented in this appeal is whether Appellants Reverend Willie E. Shell and St. Paul's African Union First Colored Methodist Protestant Church of Lancaster (St. Paul's), a local church, held their church real property in trust for the Conference of African Union First Colored Methodist Protestant Church (Conference), a religious denomination, and were therefore required to execute and to deliver a quit claim deed transferring title of the property to the Conference.[1] The Court of Common Pleas of Lancaster County issued its order on October 19, 1992 denying Appellants' post-verdict motions that raised the defenses of laches, estoppel and unclean hands to the equity action filed by the Conference and directing entry of the court's decree nisi as a final decree. The decree declared that the subject church property was held in trust for the Conference and directed St. Paul's to convey the property to the Conference.

I.

The Chancellor found that St. Paul's was formed by Reverend Shell and others in November 1977 when Articles of Incorporation were filed with the Department of State. St. Paul's was created as a domestic non-profit corporation, and its Articles of Incorporation contained the following stated purpose:

For Christian Worship and Fellowship subject to the law and usage of the Holy Bible and the Book of Discipline of the African Union First Colored Methodist Protestant Church of the United States of America or elsewhere as, from time to time, established, made and declared by the lawful authority of the said Church.

St. Paul's became affiliated with the Conference and specifically adopted its Book of Discipline in the Articles of Incorporation. The Conference, made up of approximately thirty churches in the Mid–Atlantic states, has adopted the Doctrine and the Book of Discipline of the African Union First Colored Methodist Protestant Church and Connection of the United States of America. The Book of Discipline governs the religious practices and administration of the Conference, also known as the "Connection," and its local congregations.

Article X, Paragraph 6 of the Book of Discipline of 1958 provides in pertinent part:

All Church property and other property belonging to the Connection shall be deeded to the members and Connection, and should the members disband or secede the property shall remain in the possession of the Connection, and that each local Church shall be so incorporated that if the members should disband or secede, the said Church and property shall remain in the Connection.

The Chancellor found that the 1958 edition of the Book of Discipline was in effect at all relevant times and is the controlling edition to be applied in this action.

In October 1980, St. Paul's purchased property at 736 South Duke Street in Lancaster, to be used as a church building. The property was purchased for $10,000 from the Lancaster Redevelopment Authority subsequent to a written offer submitted by the Conference on behalf of St. Paul's. The property was deeded to St. Paul's, and testimony indicated that its congregation paid all closing costs and made mortgage payments on the property until June 1989 when the Conference appointed a new pastor to the church. The Conference appointed Reverend Shell as pastor of St. Paul's in 1985 and 1986.

In September 1989, Reverend Shell resigned from the Conference after a dispute arose over the appointment of the new pastor, and the congregation withdrew its affiliation. St. Paul's notified the Conference by letter that it was no longer affiliated with the Conference and that, despite its disaffiliation, it would maintain ownership and control of the church property. The Conference demanded that St. Paul's turn over the church property in accordance with Article X, Paragraph 6 of the Book of Discipline. St. Paul's refused, and the Conference filed its action in equity for declaratory and injunctive relief to establish the Conference's ownership rights to the church property.

1. This case was reassigned to the opinion writer on February 7, 1995.

The Chancellor concluded that the clear and unambiguous language of Article X, Paragraph 6 of the Book of Discipline is incapable of any other construction: all church property shall be deeded to the members and the Conference and in the event of a disbanding or secession of the members, the property remains with the Conference. He further concluded that St. Paul's acceptance of the real estate conveyance while the aforementioned provision was still in effect represents conclusive evidence of St. Paul's intent to take and hold the property in accordance with terms of the Book of Discipline.

Although the church property was deeded only to St. Paul's, the Chancellor concluded that St. Paul's withdrawal from the Conference constituted a disbanding or secession from the Conference, and thus St. Paul's held the property in trust for the Conference. The Chancellor imposed a constructive trust in favor of the Conference "finding equity regarding [as] done what ought to have been done." Chancellor Slip Op. at 4.[2] The Chancellor required that St. Paul's deed the property over to the Conference consistent with an actual conveyance or trust.

## II.

■ Because the dispute here involves principles of civil law as opposed to church doctrine, the parties agreed that the Chancellor possessed authority to resolve the dispute under the "neutral principles" doctrine: resolution of the dispute does not present an intrusion into sacred precincts. *Orthodox Church of America v. Pavuk,* 114 Pa.Commonwealth Ct. 176, 538 A.2d 632, *appeal denied,* 519 Pa. 669, 548 A.2d 258 (1988). A hierarchical denomination claiming a trust in its favor from a local congregation must demonstrate the trust through clear and unambiguous language or conduct evidencing an

intent to create the trust. The Court must focus its inquiry on the settlor's intent at the time of creation of the trust. *Presbytery of Beaver–Butler of United Presbyterian Church of United States v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317, *cert. denied,* 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985); *Orthodox Church of America.* The record fully demonstrates that the Conference met its burden of proof.

St. Paul's accepted and agreed to be bound by the Book of Discipline, which governs matters related to the use and disposition of property held by a member church and represents a contractual agreement that may be enforced by the courts. *Western Pennsylvania Conference of United Methodist Church v. Everson Evangelical Church of North America,* 454 Pa. 434, 312 A.2d 35 (1973), *appeal dismissed,* 416 U.S. 923, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974).

■ When interpreting contracts, courts must consider the entire instrument and give effect to all of its provisions and construe the contract according to the plain meaning of its language. *State College Manor, Ltd. v. Department of Public Welfare,* 133 Pa.Commonwealth Ct. 343, 576 A.2d 407, *appeal dismissed,* 525 Pa. 263, 579 A.2d 1294 (1990). When Article X, paragraph 6 is read in its entirety, it becomes apparent that the term "all Church property" includes the local church building in question here and that the language of Article X, Paragraph 6 governs its disposition.[3]

■ The Supreme Court stated in *Middlesex* that " '[n]o particular form of words or conduct is required to manifest the intention to create a trust. Such manifestation of intention may be written or spoken words or conduct indicating that settlor intended to create a trust.' " *Id.,* 507 Pa. at 268–269, 489

2. The Chancellor's findings of fact where supported by competent record evidence are binding on this Court. The Chancellor's conclusions of law however may be reviewed by this Court. *Presbytery of Beaver–Butler of United Presbyterian Church in United States v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317, *cert. denied,* 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985).

3. Statutory law provides that when real property has been conveyed to an ecclesiastical corporation for use of any church, the property shall be taken and held subject to control of and disposition by officers or authorities of the church having a controlling power pursuant to rules or regulations of the church or religious society. Section 1 of what is commonly referred to as the Lay Control of Church Property Act, Act of April 26, 1855, P.L. 328, *as amended,* 10 P.S. § 81.

A.2d at 1324 (quoting *Bair v. Snyder County State Bank*, 314 Pa. 85, 89, 171 A. 274, 275 (1934)). *Middlesex* does not stand for the proposition that the intent to create a trust must be manifested by express language of an instrument. In the case sub judice, however, there is express documentary evidence demonstrating St. Paul's acceptance of the denomination's rules governing the use and disposition of real property; consequently, St. Paul's may not contest clear trust-creating language in the Book of Discipline on grounds of vagueness or lack of intent to create a trust.

In *Everson* the local church was the nominal titleholder of the subject property, and it admitted that the Book of Discipline and the Constitution of the national denomination, The United Methodist Church, governed all matters relating to use and disposition of property held by a member church. In affirming the decree entered by the court of common pleas in favor of the national denomination, the Supreme Court reiterated a long-standing principle in Pennsylvania:

> It has long been established in Pennsylvania that when a local church is a member of and subscribes to the doctrine and control of a hierarchically governed denomination, it cannot sever itself from such religious denomination without forfeiting its property to the parent denomination.

*Id.*, 454 Pa. at 437, 312 A.2d at 37.

■ Applying the principles articulated in *Everson*, this Court determines that the evidence conclusively demonstrates that a trust was created by St. Paul's for benefit of the Conference. Moreover, St. Paul's was bound by the terms of the Book of Discipline, and it failed to establish an express intent to retain rights to ownership and possession of the church property, thus distinguishing this case from *Orthodox Church of America* or *Middlesex*. In both cases, the local churches specifically expressed in the Articles of Incorporation or otherwise an intent to hold and retain control of their church property. Because the Chancellor's findings are supported by competent record evidence and his conclusions are supported by those findings and are consistent with the law, the final decree of the court of common pleas is affirmed.[4]

### ORDER

AND NOW, this 17th day of May, 1995, the order of the Court of Common Pleas of Lancaster County is hereby affirmed.

FRIEDMAN, Judge, dissenting.

As recognized by the Majority, in order for a court to find that a trust has been created, the record must contain clear and unambiguous language or conduct evidencing the intent to create the trust.[1] *Presbytery of Beaver–Butler of United Presbyterian Church in United States v. Middlesex Presbyterian Church*, 507 Pa. 255, 489 A.2d 1317, *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). Therefore, our focus

---

4. The Chancellor denied St. Paul's post-verdict motions because the defenses of laches, estoppel and unclean hands were neither pleaded or developed at trial nor presented to the Chancellor for consideration in his adjudication, and were raised for the first time in the post-verdict motions. Citing *Powell v. Powell*, 244 Pa. Superior Ct. 264, 367 A.2d 314 (1976), St. Paul's asserted in its brief that the defense of laches is never waived and that the Chancellor erred in refusing to decide this issue. Even if *Powell* applies and the defense of laches is never waived, St. Paul's may not prevail on this defense because the Conference acted immediately after receiving notice of St. Paul's disaffiliation by filing its equity action. St. Paul's remaining defenses of estoppel and unclean hands were properly deemed waived by the Chancellor.

1. Courts will not resolve church doctrinal disputes but will leave such decisions to the highest church adjudicatory body; however, the resolution of disputes between churches or church members involving civil law such as the enforcement or interpretation of agreements, deeds, trusts, contracts or property ownership can properly be handled by the courts of the Commonwealth using neutral principles without intruding into sacred precincts. *Orthodox Church of America v. Pavuk*, 114 Pa.Commonwealth Ct. 176, 538 A.2d 632, *appeal denied*, 519 Pa. 669, 548 A.2d 258 (1988). Further, the First Amendment to the United States Constitution prohibits courts from resolving church property disputes according to religious doctrine; rather, courts may settle such disputes using "neutral principles of law." *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). I believe that in order to arrive at the conclusion reached by the Majority, one must ignore these mandates of civil law.

must be on the intent of the settlor at the time the trust was allegedly created, *id.*, and that intent must be demonstrated with "stringent specificity." *Orthodox Church of America v. Pavuk*, 114 Pa.Commonwealth Ct. 176, 538 A.2d 632, *appeal denied*, 519 Pa. 669, 548 A.2d 258 (1988). Unlike the Majority here, I do not believe that the Conference of African Union First Colored Methodist Protestant Church (Conference), also known as the "Connection," met its burden of proof and, therefore, I respectfully dissent.[2]

When founded as a local church congregation in 1977, St. Paul's was registered in Pennsylvania as a non-profit corporation. Its Articles of Incorporation state its purpose as:

> For Christian Worship and Fellowship *subject to* the law and usage of the Holy Bible and *the Book of Discipline* of the African Union First Colored Methodist Protestant Church of the United States of America or elsewhere as from time to time established, made and declared by the lawful authority of the said church.

(R.R. at 5a.) (Emphasis added.) Article X, Paragraph 6 of the Book of Discipline of 1958, to which the above Articles of Incorporation refer, provides that:

> *All Church property and other property* **belonging to the Connection** *shall be deeded to the members and Connection,* and should the members disband or secede the property shall remain in the possession of the Connection, and that [sic] each local Church shall be so incorporated that if the members should disband or secede, the said Church and property shall remain in the Connection.

(R.R. at 41a–42a.) (Emphasis added.)

The Majority view is that the phrase "[a]ll Church property" includes the local church building and, therefore, Article X, Paragraph 6 governs the disposition of St. Paul's local church building. (Majority Op. at 79.) I cannot agree. Under its clear and unambiguous language, Article X, Paragraph 6 specifically states that it only governs property "belonging to the Connection," i.e., the Conference, requiring that such property be deeded to *both* the congregation *and* the Conference. In this case, however, the local church building was deeded solely to St. Paul's; thus, because the property never belonged to the Conference, Article X, Paragraph 6 does not apply.

Article VII of the Book of Discipline, pertaining to "The Duty of the President of the District," supports this understanding of Article X, Paragraph 6:[3]

> [T]he President shall visit the Quarterly Conference through his District as much as possible during the year, and he shall inquire into the state and condition of each Church and *see if the papers and deeds of the property of the Churches are properly made out under the title of the African Union First Colored Methodist Protestant Church.*[4] The Presidents of the various Districts shall not lay the corner stones of or dedicate any church until he is satisfied that the papers are properly made out [and] placed in the hands of the Trustees of said Church. *The Presidents also shall in making their reports to the Annual Conference, from time to time, submit a copy of all deeds* and leases and papers examined by him or them during the year.

(R.R. at 38a.) (Emphasis added.) Here, the Book of Discipline recognizes that some local church property may not be deeded to both

---

**2.** A hierarchical church body seeking possession and control of property of a local parish must demonstrate (1) an actual transfer of property from the congregation to the hierarchical church body or (2) clear and unambiguous documentary evidence or conduct on the part of the congregation evincing an intent to create a trust in favor of the hierarchical church body. *Pavuk.* I see no such evidence here.

**3.** The Majority notes that courts must interpret a Book of Discipline like a contract, considering the document in its entirety. (Majority Op. at

79–80.) Notwithstanding this acknowledgement, the Majority only considers Article X, Paragraph 6 and ignores any other portion of the Book of Discipline, including Article VII.

**4.** Article I of the Book of Discipline states the name of the Conference as follows:

> (a) This connection shall be denominated The African Union First Colored Methodist Protestant Church....

(Hearing of February 12, 1992, Exhibit 5; Book of Discipline at 13.)

the congregation and the Conference and, accordingly, establishes a procedure whereby the Conference can identify such property. To that end, Article VII requires the President of the District to examine deeds at the Quarterly Conference and to submit a copy thereof to the Annual Conference. Article VII also suggests that, if a deed lacks the name of the Conference, the President of the District must have the deed changed before that property properly belongs to the Conference.

In this case, although the President of the District dedicated St. Paul's church building in 1982, (R.R. at 164a–65a), he either failed to examine St. Paul's deed beforehand or, having done so, elected not to change the deed. If the President of the District examined the deed and submitted a copy to the Annual Conference, then higher officials likewise examined the deed and chose not to alter it. Where officials of the Conference ignore a procedure established by the Book of Discipline for the transfer of local church property from a congregation to the Conference, I believe that the Conference has waived any interest in the local church property.

In support of their opposing position, the Conference and the Majority cite *Western Pennsylvania Conference of United Methodist Church v. Everson Evangelical Church*, 454 Pa. 434, 312 A.2d 35 (1973), *appeal dismissed*, 416 U.S. 923, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974), in which our Supreme Court stated that "when a local church is a member of and subscribes to the doctrine and control of a hierarchically governed denomination, it cannot sever itself from such religious denomination without forfeiting its property to the parent denomination." *Id.* at 437, 312 A.2d at 37. However, I do not believe that *Everson Evangelical Church* is applicable here. In *Everson Evangelical Church*, the local churches admitted that they were bound by a book of discipline which specifically gave the parent denomina-

tion power over all use of property held by member churches. By contrast here, although St. Paul's and the Conference both agree that they were to be governed by the Book of Discipline, the Book of Discipline applicable to this case does not specifically give the Conference power over all use of property held by local congregations.[5]

I feel that this case is more akin to *Middlesex Presbyterian Church* than to *Everson Evangelical Church.* In *Middlesex Presbyterian Church,* the Court faced precisely the same question we are facing now, namely whether the members of a local church congregation could retain ownership of its church building after terminating its membership in the national denomination. There, as here, a congregation was created and incorporated at the local level by members of the parish. Record title to the church building was exclusively in the corporate name of the local congregation at all times. The "Constitution," the supreme law of that denomination, like the Book of Discipline in this case, did not contain language creating a trust in favor of the denomination. Further, there was no evidence that the local congregation ever explicitly agreed to hold its property in trust for the denomination. The Court declined to impose a trust, concluding that the denomination failed to show by the required clear and unambiguous evidence that the local congregation intended to convey its property interests to the denomination.

I find the same to be true in the case before us. In arguing that St. Paul's intended to create a trust, the Conference relies solely upon the 1977 Articles of Incorporation and the Book of Discipline. As stated above, I simply do not find the terms of the Book of Discipline to constitute clear and unambigu-

---

5. Indeed, the Majority cites *Everson Evangelical Church* for the proposition that St. Paul's accepted and agreed to be bound by a book of discipline which governs matters related to the use and disposition of property held by member churches. (Majority Op. at 79.) However, the *Everson Evangelical Church* Court never dis-

cussed the actual language of the particular book of discipline applicable in that case. Because the task of this court is to look for clear and unambiguous language of an intent to create a trust in a completely different book of discipline, I fail to see how *Everson Evangelical Church* is useful authority in this case.

ous language evidencing the intent to create a trust.[6] Accordingly, I would reverse.

COLINS, President Judge and NEWMAN, J., join in this dissent.

---

**6.** In support of its position, the Majority, in footnote 3 of its opinion, also cites § 7 of the Act of April 26, 1855, P.L. 328, *as amended*, 10 P.S. § 81 (sometimes called the Lay Control of Church Property Act). According to the Majority, the Lay Control of Church Property Act requires that St. Paul's can only own real property subject to the governance of the Conference and, therefore, the property belongs to the Conference. I would disagree. This argument ignores the fact that Article X, Paragraph 6 of the Book of Discipline requires that the Conference *owns* the subject property at the time of the secession of its member congregation. Even though control and disposition of real property must be exercised in accordance with the "discipline" of the denomination, here the "discipline" does not require that St. Paul's hold the subject property in trust for the Conference.